

BC

FILED
7/5/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

MPV

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| MATTHEW D. YEAGER, | |
| Plaintiff, | Civil No.    1:26-cv–06793 |
| v. | District Judge Sharon Johnson Coleman |
| JONATHAN D. STEELE ESQ, CANDACE L. MEYERS ESQ, JOHN M. D'ARCO ESQ, BEERMANN LLP, PAMELA SOCHOR and KWAME RAOUL, | **Motion to Disqualify Beermann LLP as Counsel for Defendant Pamela Sochor** |
| Defendants. | |

Plaintiff Matthew D. Yeager for his motion to disqualify Beermann LLP as counsel for Defendant Pamela Sochor hereby states as follows:

## INTRODUCTION

Disqualification is required because Beermann LLP's continued representation presents a non-waivable conflict of interest under the Illinois Rules of Professional Conduct, the Seventh Circuit's governing precedent, and this Court's inherent authority to ensure the integrity of judicial proceedings.

Federal courts in this District consistently hold that where counsel's representation is directly adverse, materially limited, or likely to make counsel a necessary witness, disqualification is mandatory.

## LEGAL STANDARD

Federal courts apply the Illinois Rules of Professional Conduct. Local Rule 83.50 adopts

1

this statutory corpus as the governing standard for attorney conduct in the Northern District of Illinois. The Court has authority to disqualify counsel where an applicable Rule of Professional Conduct has been violated. *Jones v. City of Chicago*, 722 F.3d 1016 (N.D. Ill. 2013); *Guillen v. City of Chicago*, 956 F. Supp. 1416, 1421 (N.D. Ill. 1997).

Furthermore, disqualification is required where a conflict threatens the integrity of the judicial process. The Seventh Circuit has long held that disqualification is appropriate where counsel's involvement would taint the trial, create unfairness, undermine public confidence or burden the Court with future conflict litigation. See *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982).

## ARGUMENT

### I.      Counsel's representation is directly adverse under Rule 1.7(a).

Rule 1.7(a) prohibits representation where a lawyer's representation of one client is directly adverse to another client or, as here, to the lawyer's own interests.

#### a.      Seventh Circuit guidance is clear.

The Seventh Circuit has repeatedly held that direct adversity creates a non-waivable conflict requiring disqualification. See *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1266–67 (7th Cir. 1983), wherein the Seventh Circuit held that same-matter successive representation is structurally disqualifying because the law firm attempted to represent directly adverse interests in what the court deemed to be the same matter. The overlap between the two representations created a non-waivable conflict, and disqualification was mandatory. See also *Schiessle v. Stephens,* 717 F.2d 417 (7th Cir. 1983), which supports the proposition that when a lawyer must attack the interests of a former client in a substantially related matter, the conflict is inherent because of the presumed flow of confidential information and disqualification is

**2**

required.[1]   Impermissible direct adversity would result: the lawyer's duties to the current client directly collide with the lawyer's surviving duties to the former client. Here, Beermann LLP's representation of Pamela Sochor is directly adverse because they are co-defendants (alleged co-conspirators) under the cause of action under the Exchange Act of 1934. Such a conflict is structural and absolutely cannot be cured by consent.

       b.      *Analytica* and *Shiessle* are both operative here.

Beermann LLP represents Pamela Sochor in an ongoing family-court matter. This is not a former-client conflict — it is a current-client conflict, which is even stronger under Rule 1.7(a)(1). At the same time, Beermann LLP represents its own attorneys (Defendants D'Arco, Steele and Meyers) who are accused of participating with Sochor in forming an unregistered group to mount a stealth control-structure attack on Yeager Corp.

Moreover, the interests of Defendant Sochor and the Beermann Defendants are directly adverse. Sochor's best interests are likely served by testifying against Beermann LLP, exposing the origin and scope of the control-structure attack and detailing the role of D'Arco, Steele, and Meyers. Beermann Defendants' best interests are served by suppressing or neutralizing Sochor's testimony, preventing disclosure of its alleged involvement and maintaining control over Sochor through the ongoing custody case. Such constitutes direct adversity in the same matter, exactly the species of conflict which *Analytica* prohibits.

The matters are intertwined. Just like *Analytica*, the Seventh Circuit would treat the overlap as the same matter, because the family-court litigation is the alleged origin of the control-structure attack, the corporate-control litigation depends on facts arising from the custody

---

[1] District Courts routinely apply these 7th Circuit holdings. For example, direct adversity was flagged in *United States v. Williams*, Case No. 3:17-cr-30053 (S. Dist. Illinois) wherein defense counsel was disqualified because he previously represented a government witness in a substantially related matter.

case and **Beermann LLP's representation of Defendant Sochor is part of the alleged scheme**. This is not "related matters." These circumstances involve one matter with two procedural fronts. Finally, Beermann LLP will likely have to cross-examine[2] Defendant Sochor as the litigation advances. This adds *Schiessle*-type witness adversity on top of *Analytica*.[3]

        c.        <u>Beermann LLP has coercive leverage over Defendant Sochor.</u>

In another matter, *Celgard, LLC v. LG Chem, LTD*, Nos. 2014-1675, -1733, -1806, 2014 WL 7691765, at \*1 (Fed. Cir. Dec. 10, 2014), law firm Jones Day had appeared for Celgard to enforce a preliminary injunction Celgard had obtained against suppliers of lithium batteries. *Id*. at \*1. The complaint had named only the battery supplier and its affiliated companies, not Apple, a long-time client of Jones Day. *Id*. The court granted Apple's motions to intervene and to disqualify, finding direct adversity because: "Apple faces not only the possibility of finding a new battery supplier, but also additional targeting by Celgard in an attempt to use the injunction issue as leverage in negotiating a business relationship. Thus, in every relevant sense, Jones Day's representation of Celgard is adverse to Apple's interests."

The *Celgard* court's reasoning is instructive here: the best interests of Beermann LLP are best-served by quieting potential testimony by Defendant Sochor regarding the origin and scope of the control structure attack scheme against Yeager Corp. However, Defendant Sochor's best interests are likely best served by testifying against Beermann LLP – in specific, against

---

[2] Cross-examination is the **most extreme form** of attacking a former client's interests.

[3] Even if direct adversity were not present, Rule 1.7(b) independently prohibits representation where a lawyer's ability to represent a client is materially limited by responsibilities to another client or by the lawyer's own interests. Courts in this Circuit disqualify counsel when counsel's personal conduct is at issue, counsel may need to defend their own actions, counsel's prior representation creates divided loyalties, or counsel's interests diverge from the client's. See *LaSalle Nat'l Bank v. County of Lake*, 703 F.2d 252, 257 (7th Cir. 1983). A materially limiting conflict is disabling because it compromises counsel's ability to provide loyal, unconflicted advocacy.

Attorneys D'Arco, Steele and Meyers. Furthermore, Beermann LLP can leverage its continued representation of Defendant Sochor in the underlying custody matter to force her silence or otherwise control her written submissions and testimony under blanket representation together with the Beermann Defendants.

Thus, Beermann LLP exerts control and influence over Defendant Sochor. Because Beermann drives the docket in her custody matter, it can pressure her not to testify, influence her cooperation, threaten withdrawal and use the custody matter as leverage. This is *Celgard*-type coercive adversity, which courts treat as non-waivable.

## II. Counsel is a necessary witness under Rule 3.7.

Rule 3.7 prohibits a lawyer from serving as an advocate at a trial in which the lawyer is likely to be a necessary witness: when counsel is both advocate and witness, the adversarial process collapses. The Seventh Circuit has long held that disqualification is mandatory where counsel's testimony is relevant, material, and unobtainable from other sources. *United States v. Morris*, 714 F.2d 669, 671–72 (7th Cir. 1983).

Here, the conflict is not peripheral — it is architectural. Counsel is not merely a witness to isolated communications or procedural events. Here, Beermann LLP is a witness to the design, implementation, and operational logic of the underlying state court litigation strategy by which the stealth control structure attack against Yeager Corp was conceived and implemented. That makes counsel a structural actor, not a passive observer, and Rule 3.7 squarely prohibits structural actors from simultaneously serving as trial advocates.

### a. Counsel's testimony goes to the origin of the litigation strategy.

Rule 3.7 is triggered here where testimony by Beermann LLP – and its attorneys who are defendants hereunder and also personally involved in Defendant Sochor's underlying Custody

Matter in state court – concerns the genesis of the litigation strategy to co-opt the underlying Custody Matter as a stealth, undisclosed means of targeting voting blocks held by the Yeager Trusts. Rule 3.7 is furthermore activated here wherein essential details about the decision-making architecture of the control structure attack on Yeager Corp can only be competently obtained from Beermann LLP. Courts routinely disqualify counsel where the lawyer's own conduct forms part of the factual matrix the trier of fact must evaluate. See *Morris*, 714 F.2d at 671–72.

Where counsel conceived the litigation strategy in the state court in order to implement the control structure attack against Yeager Corp, directed its implementation, coordinated its execution, or embedded themselves in the factual narrative, their testimony became indispensable. No other witness can supply the same evidence because no other witness participated in the same strategic design. This is the textbook definition of a **necessary witness**.

b. Counsel's dual role creates a structural conflict that cannot be cured.

Rule 3.7 is designed to prevent precisely this scenario: counsel acting as both architect and advocate. Where, as here, Beermann LLP is responsible for designing and implementing the underlying events in question in the state court — including strategic decisions, litigation posture and coordinated actions — they become a witness to intent, motive, purpose, coordination, timing and operational management.

These are not peripheral facts. They are core elements of the factual record. Counsel's testimony is therefore material, unique, and unavoidable. No waiver can cure this defect. No screening mechanism can cure it. No substitution of personnel within the firm can cure it. The conflict is structural, not episodic.

c. Counsel's continued participation would contaminate the evidentiary record.

The Seventh Circuit recognizes that when counsel is a necessary witness because of their

involvement **in another matter substantially related to the present litigation**, their continued participation taints the record itself. See *Freeman*, 689 F.2d at 721. That is the exact posture here wherein the stealth control structure attack against Yeager Corp at issue in the matter *sub judice* has been conceived and implemented by Beermann LLP through Defendant Sochor's underlying Custody Matter. Every filing, every strategic decision, and every representation to the Court in this matter is necessarily intertwined with counsel's very own extensive factual involvement in the underlying Custody Matter. This situation is impermissible and presents a level of seriousness which demands a serious remedy.

The posture here creates a self-referential evidentiary loop wherein counsel: advocates for a narrative they helped create, challenges or defends conduct they personally directed, shapes the record on issues where they are a witness and influences testimony on matters where they themselves must testify. Federal courts do not permit this. Rule 3.7 exists to prevent it.

     d.     Counsel's testimony cannot be obtained from other sources.

Rule 3.7 requires disqualification where counsel's testimony is not available from other witnesses. That is precisely the situation here. When counsel is the origin point of the strategic architecture, no other witness can reconstruct counsel's intent, explain counsel's decision-making including notably its decision to not notify the SEC of its attack against Yeager Corp, describe counsel's coordination, articulate counsel's strategic objectives or testify to counsel's internal reasoning. These facts are non-delegable and non-replicable. Only counsel possesses them.

**III.    Continued representation weakens and burdens these proceedings.**

When a conflict exists at the inception of a case, the risk is not episodic — it is structural. The record itself is shaped by counsel whose interests are misaligned with proper advocacy.

     a.     Beermann is using confidential information from Sochor to defend itself here.

"[A] lawyer is prohibited from using confidential information that he has obtained from a client against that client on behalf of another one." *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1269 (7th Cir. 1983). Here, Beermann LLP has obtained confidential information from Defendant Sochor regarding the MSA waiver, the asset holdings of the Yeager Trusts and other information obtained by Defendant Sochor in the strictest confidence from Plaintiff in order to craft and implement its own defense strategy in this matter.

This amounts to nothing short of structural taint, which is not limited to isolated filings or discrete events. It affects the framing of pleadings, the shaping of discovery, the assertion of privilege, the selection of legal theories, the presentation of evidence, and the strategic posture of the case. Once structural taint enters the record, it cannot be surgically removed. The only remedy is early disqualification.

> b.      Attorney Elster himself is involved in the underlying Custody Matter.

The Seventh Circuit has been historically flexible about reasonable workarounds allowing selected attorneys from a law firm to escape disqualification if there is a Chinese Wall erected between those selected attorneys and the attorney(s) who has been "infected" with impermissible confidential knowledge.

To wit: "Although the knowledge possessed by one attorney in a law firm is presumed to be shared with the other attorneys in the firm … this court has held that this presumption may be rebutted… The question arises here whether this presumption may be effectively rebutted by establishing that the 'infected' attorney was 'screened,' or insulated … thus avoiding disqualification of an entire law firm based on the prior employment of one member." *LaSalle Nat'l Bank v. County of Lake*, 703 F.2d 252, 257 (7th Cir. 1983).

However, that is not the posture here. Attorney Matthew D. Elster (who has entered his

8

appearance on behalf of the Beermann Defendants and Defendant Sochor) **has been personally involved in Defendant Sochor's underlying Custody Matter**. Conversely, there is no reasonable scenario under which senior attorneys D'Arco, Steele and Meyers did not socialize and share information about the Custody Matter within the small Beermann LLP law firm.

    c.    <u>Conflicted counsel taints the evidence.</u>

When counsel's own conduct is intertwined with the factual narrative, their continued participation creates a self-referential evidentiary loop wherein counsel: advocates for a narrative they helped create, challenges or defends conduct they personally directed, shapes testimony on matters where they themselves are witnesses, influences privilege boundaries that implicate their own actions.

This is the functional equivalent of allowing a disqualified judge to preside. The latter setup has been clearly proscribed by the Supreme Court, which held that due process is violated when a judge with a structural conflict presides, because the conflict infects the entire proceeding. *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) Under *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988), the Supreme Court similarly warned when a judge with a conflict presides, every order and judgment is subject to vacatur, even if the judge acted in good faith.

    d.    <u>The Court inherits avoidable workload if disqualification is delayed.</u>

The Seventh Circuit has emphasized that early disqualification is the least disruptive and most efficient course, precisely because it prevents the Court from having to unwind a contaminated record later. *Freeman*, 689 F.2d at 721. Because this case is in its earliest stages, the Court has a unique opportunity to ensure a clean evidentiary record, clean privilege boundaries, clean discovery architecture, clean motion practice, and clean appellate posture.

If conflicted counsel remains, the record will be built on compromised ground. Every ruling will be subject to challenge, and the Court will be forced to manage a litigation whose foundation is unstable. The Seventh Circuit has made clear that the integrity of the judicial process outweighs any hardship to conflicted counsel or their client. *Freeman*, 689 F.2d at 721.

**IV.     Failure to disqualify now will render every subsequent ruling vulnerable to attack.**

Federal courts have repeatedly recognized that when a conflict of interest exists at the outset of litigation: every subsequent order, ruling, and factual development becomes vulnerable to challenge. This is because conflicted counsel creates what the Seventh Circuit has described as "structural taint" –  a defect that infects the entire proceeding and cannot be cured retroactively. See *Freeman*, 689 F.2d at 721 (disqualification required where counsel's continued involvement would taint the trial and undermine the integrity of the judicial process).

Courts in this District have emphasized that conflicts must be addressed immediately, because allowing conflicted counsel to remain creates a substantial risk that the Court's future rulings will be subject to collateral attack. See *Guillen v. City of Chicago*, 956 F. Supp. 1416, 1422 (N.D. Ill. 1997).

Moreover, conflicted counsel creates a risk of reversible error. The Seventh Circuit has made clear that where a conflict is present, the failure to disqualify counsel can require vacatur of orders, reopening of discovery, re-briefing of motions, retrial or reversal on appeal. See *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1269 (7th Cir. 1983) (conflicted representation infects the litigation and requires disqualification to prevent tainted proceedings).

The risk is systemic, not episodic. The problem is not limited to a single motion or hearing. It rather pollutes every deposition, privilege assertion, strategic decision, filing, representation to the Court taken by conflicted counsel is suspect. Federal courts have repeatedly

held that such structural defects cannot be cured by later remedial measures. *LaSalle Nat'l Bank v. County of Lake*, 703 F.2d 252, 257 (7th Cir. 1983).

## CONCLUSION

This Court stands at the only moment in this litigation when the conflict can be contained. If disqualification is not ordered now, the defect will not remain static — it will metastasize. Every deposition, privilege assertion, strategic decision, and ruling that follows will be built on a compromised foundation. The Seventh Circuit has made clear that such structural taint cannot be cured retroactively, and courts are not required to preside over a record susceptible to be vacated, reopened, or attacked on appeal.

Allowing conflicted counsel to remain at this stage would be the functional equivalent of allowing a disqualified judge to continue presiding: the entire proceeding becomes vulnerable, and the Court inherits a future burden of avoidable motions, avoidable disputes, and avoidable appellate risk. Early disqualification is not merely permissible — it is the only path that protects the integrity of the record and the parties, and minimizes the Court's workload going forward.

For these reasons, the Court should disqualify Beermann LLP now, before the conflict infects the case beyond repair.

11

**WHEREFORE**, Plaintiff prays this Court disqualifies Beermann LLP and Attorney Matthew D. Elster of Beermann LLP from continued representation of Defendant Pamela Sochor under this matter effective immediately.

Dated: **July 5, 2026**                                  Respectfully submitted,

/s/ Matthew D. Yeager, In Pro Se
1047 Hickory Drive
Western Springs, IL 60558
Email: matthewyeager2024@gmail.com
Tel: (630) 862-1123

### CERTIFICATE OF SERVICE

This paper has been electronically filed with the Northern District of Illinois and served via email on all counsel of record.

Dated: **July 5, 2026**                                  /s/ Matthew D. Yeager