**THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| MATTHEW D. YEAGER,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN D. STEELE, ESQ., CANDACE L. MEYERS, ESQ., JOHN M. D'ARCO, ESQ., BEERMANN LLP, PAMELA SOCHOR, and KWAME RAOUL,<br><br>Defendants. | ) | Case No.: 1:26-cv-06793<br><br>Hon. Sharon Johnson Coleman, Judge Presiding<br><br>Magistrate Judge Keri L. Holleb Hotaling |

**NON-STATE DEFENDANTS' MOTION TO DISMISS**

Defendants, Jonathan D. Steele, Candace L. Meyers, John M. D'Arco, and Beermann LLP (collectively, the "**Beermann Defendants**"), and Pamela Sochor ("**Pamela**") (together with the Beermann Defendants, the "**Defendants**"), through their attorneys, Beermann LLP, and pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), move to dismiss Plaintiff's Complaint (ECF #1), as follows:

## INTRODUCTION

Plaintiff, Matthew D. Yeager ("Plaintiff"), is involved in ongoing post-judgment domestic relations proceedings against his former wife, Pamela, in the Circuit Court of Cook County, Case No. 2020-D-002239 (the "State Court Matter").[1] Compl. ¶1 n.1, ¶35. Apparently dissatisfied with being ordered by the state court to contribute to Pamela's attorneys' fees, Plaintiff sued his former wife, her attorneys, their law firm, their law firm's managing partner, and the Illinois Attorney General in federal court, asking it to (i) recast routine orders entered under the Illinois Marriage

[1]This Court may take judicial notice of matters of public record, including the filings and orders entered in the State Court Matter. *J.B. v. Woodard*, 997 F.3d 714, 717 (7th Cir. 2021), citing *Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019).

and Dissolution of Marriage Act as "Judicial Takings," (ii) inject a constitutional dimension into orders to pay fees, (iii) stretch Section 13(d) of the Securities Exchange Act of 1934 far beyond anything Congress ever intended, and (iv) award him damages for common law tortious interference with contract. Each of his theories fails, several times over.

- *First*, Plaintiff lacks standing to pursue injuries to non-party trusts which he neither owns nor controls.
- *Second*, this Court should abstain from what is, in everything but name, a request for federal oversight of a pending state court domestic relations case.
- *Third*, this Court should dismiss Plaintiff's Section 1983 claims because none of the Moving Defendants are state actors.
- *Fourth*, the constitutional provisions Plaintiff invokes do not apply to routine orders entered in private civil litigation.
- *Fifth*, *Edelson v. Ch'ien*, 405 F.3d 620 (7th Cir. 2005)—the very case Plaintiff cites as "controlling Seventh Circuit authority" in his prayer for relief—forecloses his Section 13(d) claim.
- *Finally*, Plaintiff's tortious interference count is barred by Illinois' absolute attorney litigation privilege and fails on its elements. The Complaint should be dismissed with prejudice.

## ALLEGATIONS OF THE COMPLAINT

In 2021, Plaintiff and Pamela executed a Marital Settlement Agreement ("MSA") resolving the division of their marital property. Compl. ¶17. Plaintiff alleges that, under the MSA, Pamela waived any claim regarding certain trusts, over which Plaintiff "exercises no control," and which hold approximately 62.2% of the voting power of a publicly traded company Plaintiff calls "Yeager Corp." (the "**Yeager Trusts**"). Compl. ¶¶17–19.[2]

Post-decree custody litigation commenced in 2024 (Compl. ¶20) wherein Pamela's counsel sought and received awards of interim attorneys' fees from Plaintiff. Compl. ¶24. On October 6,

[2] While Plaintiff alleges that Yeager Corp. is a "$10 billion publicly traded enterprise," no such entity is listed on any major exchange. Defendants will assume Plaintiff's mentions of "Yeager Corp." refer to Hub Group, Inc. (**NASDAQ: HUBG**), the business which now employs him.

2025, the state court granted the second petition and ordered Plaintiff to pay $95,000—what Plaintiff labels the "First Judicial Taking." Compl. ¶¶24–26.

Shortly after Plaintiff filed this action—on June 10, 2026—the state court granted Pamela's third request for interim attorneys' fees, finding that Plaintiff has the ability to pay and ordering him to pay Pamela the sum of $180,000. Plaintiff labels this anticipated ruling as the "Second Judicial Taking." Compl. ¶27.[3] The order contains no findings concerning the Yeager Trusts and directs no liquidation or transfer of any asset or security.

Plaintiff asserts that his compliance with these interim fee orders "could require" liquidation of trust assets by the Yeager Trusts' independent fiduciaries; and that a hypothetical transfer of trust-held shares to non-permitted transferees such as the Beermann Defendants "would trigger" a share-conversion mechanism in Yeager Corp's certificate of incorporation. (Compl. ¶¶23, 26, 29, 32). He then characterizes the Moving Defendants as an undisclosed statutory "group" under Section 13(d)(3) of the Exchange Act and SEC Rule 13d-5, supported by allegations that fourteen filings in the State Court Matter "coincided" with Yeager Corp "market-sensitivity windows" and that, "[u]pon information and belief," an unnamed Beermann LLP principal holds a financial interest in a different publicly traded company in the same industry. (Compl. ¶¶31–34, 58–59, 115–118).

Based upon these allegations, the Complaint asserts six counts against all Defendants: violations of the Takings Clause (Count I), procedural due process (Count II), substantive due process (Count III), and the Contract Clause (Count IV), each purportedly actionable through 42

[3] This Court can take judicial notice of the June 10, 2026 interim fee award, a copy of this order is attached hereto as **Exhibit A**.

U.S.C. §1983; violation of Section 13(d) of the Exchange Act and Rule 13d-5 (Count V); and common law tortious interference with contract (Count VI).[4]

## ARGUMENT

### I. Plaintiff's Claims on Behalf of the Yeager Trusts Should Be Dismissed Pursuant to Rule 12(b)(1) for Lack of Standing.

Counts I, IV, V, and VI of Plaintiff's Complaint all rest on the alleged "taking" of trust assets (Compl. ¶¶94–97), the impairment of the trust instruments (Compl. ¶¶111–13), the disposition of trust-held securities (Compl. ¶¶116–19), and interference with the trusts' contracts (Compl. ¶¶122–26). To the extent these claims assert a viable cause of action (they do not), Plaintiff lacks standing to bring them.

By his own admission, the Yeager Trusts are irrevocable, independent, third-party trusts over which he "exercises no control" such that he "lacks authority over trust management, distributions, or the disposition of trust assets." (Compl. ¶19). Under Illinois law, a trust may only sue or be sued exclusively through its trustee. *Sullivan v. Kodsi*, 359 Ill. App. 3d 1005, 1010 (2005); *Doyle v. Hood*, 2018 IL App (2d) 171041, ¶ 38 (holding that a trustee "is the only person who can bring an action on the trust's behalf"). To the extent the trusts have been injured by Defendants' actions, the trustee of the Yeager Trusts, not one of their beneficiaries, is the only proper plaintiff here. Counts I, IV, V, and VI should be dismissed under Rule 12(b)(1) for lack of standing. *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021).

[4]The Complaint devotes many of its pages to allegations leveled by other *pro se* litigants against Beermann LLP in other lawsuits, which Plaintiff concedes are pleaded "to support context and plausibility," not liability. (Compl. ¶¶37–51, 65). This Court need not accept allegations lifted from pleadings in other cases as true. *In re Ace Track Co., Ltd.*, 556 B.R. 887, 901, fn. 13 (Bankr. N.D. Ill. 2016).

## II. This Court Should Abstain from Exercising Jurisdiction Over Counts I-IV of Plaintiff's Complaint.

Despite his bald claims to the contrary, Plaintiff's Complaint explicitly asks this Court to interfere with ongoing state court domestic relations proceedings. While the absence of a final judgment in that case places this matter outside of *Rooker-Feldman*'s reach, as the Seventh Circuit explained in *Hadzi*:

> in domestic relations cases where no abstention doctrine fits exactly, we have held that abstention is nevertheless appropriate where federal jurisdiction threaten[s] interference with and disruption of local family law proceedings. (Citations and quotations omitted)
> *Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 400 n.2 (7th Cir. 2023).

Thus, even where claims do not neatly fit any abstention doctrine, abstention remains appropriate where the exercise of federal jurisdiction "threaten[s] interference with and disruption of local family law proceedings." *J.B. v. Woodard*, 997 F.3d 714, 722–24 (7th Cir. 2021). *Woodard* describes domestic relations as "a robust area of law traditionally reserved for state and local government—to such a degree as to all but compel the federal judiciary to stand down." *Id.* at 723.

Here, considering whether the state court's interim fee orders "took" Plaintiff's property, denied him due process, or impaired his rights under the MSA—with the state court trial now underway—would "reflect a lack of respect for the state's ability to resolve [the issues] properly before its courts" (*Woodard*, 997 F.3d at 724) and require this Court to review the ongoing state court proceedings "from top to bottom." *Hadzi-Tanovic*, 62 F.4th at 404-05. It should abstain from doing so.

Additionally, both *Younger* abstention and the Domestic Relations exception support dismissal on abstention grounds.

*Younger* abstention directs federal courts to abstain from exercising jurisdiction over federal claims seeking to interfere with pending state court proceedings. *Younger v. Harris*, 401 U.S. 37, 43-44 (1971). *Younger* requires abstention from enjoining ongoing state proceedings that (1) are judicial, (2) implicate important state interests, and (3) offer adequate opportunity for review of constitutional claims, (4) if no extraordinary circumstances exist which would make abstention inappropriate. *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n* 457 U.S. 423, 432, 437 (1982). All four elements are satisfied here.

The state proceedings are judicial and implicate important state interests. *Parejko v. Dunn Cnty. Circuit Court*, 209 Fed. Appx. 545, 546 (7th Cir. 2006) ("domestic relations litigation … is an area of significant state concern from which the federal judiciary should generally abstain under *Younger*."). Also, the state court provides Plaintiff with ample opportunity to litigate his claims. *Id.* at 547 ("state courts are equally capable of enforcing federal constitutional rights as federal courts"). Finally, plaintiff asserts no exceptional circumstances here, such as "an extraordinarily pressing need for immediate federal equitable relief" that, if not granted, will irreparably injure him. (*Kugler v. Helfant,* 421 U.S. 117, 124–25 (1975)).

Further, the domestic relations exception precludes federal review of state-court domestic relations orders, recognizing that domestic relations disputes are traditionally left to state courts with more experience in such matters. *Weinhaus v. Cohen*, 773 Fed. Appx. 314, 316 (7th Cir. 2019); *Jones v. Brennan*, 465 F.3d 304, 306-07 (7th Cir. 2006). Plaintiff's suggestion that the exception does not apply because the orders he complains of involve fees, not child custody (Compl. ¶7), is of no moment, as the underlying proceedings below squarely involve "custody" of a minor child and interfering with orders entered in those proceedings—even fee orders—would

undeniably require this Court to trample on the ongoing state court domestic relations proceedings. It should decline to do so.

### III. Plaintiff's Complaint Should Be Dismissed Under Rule 12(b)(6) For Failure To State A Claim.

#### a. Counts I–IV Fail Because the Moving Defendants Are Not State Actors.

Plaintiff brings Counts I through IV "pursuant to 42 U.S.C. §1983." Because a Section 1983 claim requires state action (*Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)), a plaintiff may not bring such claims against private citizens not acting under color of state law. *Hershinow v. Bonamarte*, 772 F.2d 394, 397 (7th Cir. 1985). Private attorneys are not state actors "'under color of state law' within the meaning of §1983." *Polk Cnty. v. Dodson*, 454 U.S. 312, 318–19 (1981); see also *Hansen v. Ahlgrimm*, 520 F.2d 768, 770 (7th Cir. 1975) ("It is established that a private attorney, while participating in the trial of [a] private state court action, is not acting under color of state law."). Nor, of course, is a private litigant: "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge." *Dennis v. Sparks*, 449 U.S. 24, 28 (1980).

While private actors can face Section 1983 liability when they corruptly collaborate with state officials, that is a narrow path, and a plaintiff alleging a "vast, encompassing conspiracy" arising out of custody litigation "must meet a high standard of plausibility"—a standard that even specific alleged judicial irregularities do not satisfy. *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009).

Here, Plaintiff does not come close to alleging state action on the part of the Defendants. Instead, he submits that "the combination of private filings and state-court enforcement mechanisms resulted in a procedural posture in which private requests were enforceable through judicial processes." Compl. ¶64. In other words, Defendants filed motions and were afforded relief.

This is routine litigation; not state action, and a defendant "resort[ing] to the courts" cannot support a Section 1983 claim. *Dennis*, 449 U.S. at 28. As to Defendant D'Arco, apart from conclusory group allegations (Compl. ¶¶21, 58), the Complaint's only individualized allegation is his status as Beermann's managing partner with supervisory authority. (Compl. ¶13). It identifies no motion he signed, filed, argued, or directed, and Section 1983 does not recognize *respondeat superior* liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

**b. Counts I–IV Fail Because the Constitutional Provisions Plaintiff Invokes Do Not Apply to Routine Orders Entered in Private Civil Litigation.**

Absence of state action aside, Counts I-IV fail because state court fee orders with which he disagrees do not violate his constitutional rights.

i. The Takings Clause (Count I)

The Takings Clause of the Fifth Amendment restrains the *government* from taking private property *for public use* without just compensation. *Knick v. Township of Scott*, 588 U.S. 180, 184 (2019). An interim fee award in a divorce case appropriates nothing to the public; it requires the payment of money by one *private* litigant to another *private* litigant. Plaintiff cites no authority providing that a court order requiring payment between litigants falls within the scope of the Takings Clause because no such authority exists. The authorities Plaintiff invokes (Compl. ¶93) confirm that point as both *Webb's* and *Phillips* involved governmental appropriation of assets rather than private fee awards. *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155 (1980), and *Phillips v. Washington Legal Foundation*, 524 U.S. 156 (1998). The fee orders here do no such thing: they require one litigant to pay another. Count I fails as a matter of law.

ii. Procedural Due Process (Count II)

Count II of Plaintiff's Complaint asserts a violation of his procedural due process rights against all defendants. Lack of state action aside, Plaintiff pleads himself out of court, alleging the

*existence* of process, not its absence. Due process traditionally requires "notice and an opportunity to be heard." *Dietchweiler ex rel. Dietchweiler v. Lucas*, 827 F.3d 622, 628 (7th Cir. 2016). Here, and by his own admission, Plaintiff received both.

He concedes that he received notice of Defendants' fee petitions and "repeatedly and strenuously objected" to them (Compl. ¶24). He litigated motions to quash, motions to limit discovery, and multiple motions to reconsider the state court's rulings (*id.* ¶¶71–73), and acknowledges that the state court "immediately ordered an evidentiary hearing about the fees" (*id.* ¶76). While Plaintiff is clearly unhappy with the results of these state court processes, his unhappiness does not establish an absence of constitutionally adequate process, especially when Illinois' reviewing courts remain open to him. Count II fails as a matter of law.

iii. Substantive Due Process (Count III)

Substantive due process is reserved for only the most egregious official conduct which shocks the conscience. *Robbin v. City of Berwyn*, 108 F.4th 586, 591 (7th Cir. 2024). It is not "a blanket protection against unjustifiable interferences with property," and it is not a vehicle for converting disputes governed by state law into federal constitutional litigation. *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003). A contested interim fee award, entered after notice, written objections, and adversarial state-court proceedings—even one Plaintiff considers excessive—is part and parcel of domestic relations practice and explicitly authorized by statute. 750 ILCS 5/501. It does not shock the conscience, and requesting such relief does not turn one's former spouse or her attorneys into state actors. Count III fails as a matter of law.

iv. The Contract Clause (Count IV)

Count IV of Plaintiff's Complaint accuses Defendants of violating his rights under the Contract Clause to the United States Constitution. What he does not allege, however, is the

existence of any *legislative* impairment of these contracts, a necessary predicate to such a claim (along with state action which, again, is absent here).

Over a century ago, it was already "settled by a long line of decisions, that the [Contract Clause] is directed only against impairment by legislation and not by judgments of courts." *Tidal Oil Co. v. Flanagan*, 263 U.S. 444, 451 (1924). The law has not changed since then. *Khan v. Gallitano*, 180 F.3d 829, 832 (7th Cir. 1999) (confirming that the Contract Clause "prohibits only legislative changes that impair contracts."). Plaintiff identifies no legislative changes, but instead complains about the state court's application of existing fee statutes to orders entered in 2025 and 2026. This is not a contract clause violation.

Plaintiff's reliance on "*IRMO Johnston*, 2014 WL 5460610 (Ill. App. Ct.)" does not save his claim, because no such case exists. (Compl. ¶111, fn. 6). The Westlaw number he supplies—"2014 WL 5460610"—directs to *Medicus Ins. Co. v. Cross*, a 2014 decision from the Northern District of West Virginia granting a motion to dismiss in an insurance coverage action. No. 5:13CV145, 2014 WL 5460610 (N.D.W. Va. Oct. 27, 2014). And while the undersigned counsel was able to locate three Illinois cases captioned *In re Marriage of Johnston*, not one "cited Contract Clause principles" as Plaintiff alleges.[5] The only conclusion to be drawn is that Plaintiff is turning to generative AI to conduct legal research, in violation of this Court's standing orders and Rule 11. In any event, Count IV fails as a matter of law.

**c. Count V is Foreclosed by *Edelson v. Ch'ien*.**

In Count V of his Complaint, Plaintiff seeks a preliminary and permanent injunction barring Defendants from taking steps to liquidate Yeager Trust assets until they make appropriate

---

[5] See *In re Marriage of Johnston*, 206 Ill. App. 3d 262 (1990); *In re Marriage of Johnston*, 2018 IL App (3d) 160559-U; *In re Marriage of Johnston*, 2015 IL App (2d) 140919-U. The 2015 and 2018 decisions are nonprecedential orders under Illinois Supreme Court Rule 23 and are cited only to identify the universe of decisions bearing this caption.

disclosures required by section 13(d) of the Securities Exchange Act of 1934, apparently suggesting that they are making a hostile takeover bid for a publicly traded company by filing fee petitions in a divorce case. Count V fails because *Edelson*, Plaintiff's own authority, forecloses his ability to bring a private cause of action on the facts alleged.

Broadly speaking, section 13(d) of the Exchange Act requires any person who directly or indirectly acquires more than 5% of stock in a covered business to file certain disclosures with the goal of "empower[ing] the common investor with adequate information regarding those seeking control of an issuer through a tender offer or other method of acquisition so that an individual investor is able to decide whether to retain or dispose of his stock." *Edelson v. Ch'ien*, 405 F.3d 620, 633 (7th Cir. 2005); 15 U.S.C. § 78m(d).

As the language of section 13(d) makes clear, its focus is on actual acquisition such that its disclosure requirements "are triggered by an individual '*acquiring* directly or indirectly the beneficial ownership' of five percent of any class of security. *Id.* at 632 (quoting 15 U.S.C. § 78m(d)(1) (emphasis in *Edelson*).

Thus, while section 13(d) creates a private right of action, *Edelson* limited the circumstances in which such an action could be brought solely to "the context of a tender offer or other contest for control." *Edelson*, 405 F.3d at 634. Because section 13(d) authorizes private rights of action only where stock is actually *acquired* to take control, "until a large shareholder begins acquiring shares for the purpose of controlling the issuer, the rights of other shareholders are not implicated," and conduct unrelated to such an acquisition "simply is not the type of activity which Congress intended to regulate through private enforcement under § 13(d)." *Id.* at 633–34.

While Plaintiff cites *Edelson* in his Complaint, he fails to plead facts bringing Count V within the narrow path forward it authorizes. *Edelson* requires either a tender offer or an acquisition

of 5% or more of the "Yeager Corp." securities by any or all Defendants. Such facts are entirely absent here. The Complaint alleges no tender offer. It alleges no proxy contest, no takeover bid, and no contest for control of "Yeager Corp." It does not allege that any Defendant has acquired—or agreed with anyone to acquire—a single share of "Yeager Corp." stock, and it does not allege that any Defendant beneficially owns *any* "Yeager Corp." securities, much less five percent or more.

Plaintiff's attempts to cast Defendants as a "group" do not salvage his claims. Even if Defendants qualified as a "group," without facts evincing their ownership of a threshold percentage of "Yeager Corp." shares, Plaintiff cannot maintain a section 13(d) cause of action. *Bath Indus., Inc. v. Blot*, 427 F.2d 97, 109 (7th Cir. 1970).

Finally, Plaintiff cannot escape his own lack of standing. Insofar as trusts which he does not control, rather than him directly, own and control the shares of "Yeager Corp.," even if he could assert Defendants' ownership of the requisite number of shares, he would lack standing to bring his claim. See *Bath*, 427 F.2d at 112 ("the basic regulatory thrust of the Act is in the context of struggles for corporate control, and voting control of stock is the only relevant element of beneficial ownership in that context."). See also 17 C.F.R. §240.13d-3(a) (providing that beneficial ownership, for purposes of section 13(d), requires voting power or investment power).

Our courts have placed strict limits on who may bring a section 13(d) claim, and when. No court has ever expanded section 13(d)'s reach to seeking and collecting a fee award from a domestic relations litigant who happens to be the beneficiary of a trust holding shares of a publicly traded company because doing so is not, under any stretch of the imagination, a takeover bid. Count V of Plaintiff's complaint fails.

**d. Count VI Is Barred by the Absolute Litigation Privilege and is Insufficiently Pled.**

Count VI of Plaintiff's Complaint is a state-law claim for tortious interference with contract and rests on the same conduct as every preceding count. (Compl. ¶¶124–125). It should be dismissed where (i) it is barred by Illinois' absolute attorney litigation privilege; (ii) it is insufficiently pled; and (iii) if the federal claims are dismissed, the Court should decline to exercise supplemental jurisdiction over it.

***First***, Illinois cloaks attorneys with "complete immunity" with respect to communications and conduct pertaining to proposed or pending litigation. *Scarpelli v. McDermott Will & Emery LLP*, 2018 IL App (1st) 170874, ¶¶18–19, 25. This privilege exists to allow attorneys "the utmost freedom in their efforts to secure justice for their clients" (*Kurczaba v. Pollock*, 318 Ill. App. 3d 686, 701–02 (2000)) and applies regardless of the legal theory asserted, because "[t]he absolute privilege would be meaningless if a simple recasting of the cause of action * * * could void its effect." *Johnson v. Johnson & Bell, Ltd.*, 2014 IL App (1st) 122677, ¶¶16–18. This is true regardless of the attorney's alleged motives. *Creation Supply, Inc. v. Hahn,* 608 F. Supp. 3d 668, 698 (N.D. Ill. 2022) ("The attorney litigation privilege is, by its terms, absolute."), *aff'd sub nom. Creation Supply, Inc. v. Cherrie*, 61 F.4th 511 (7th Cir. 2023).

***Second***, even setting aside privilege, Count VI is insufficiently pled. Tortious interference requires an intentional and unjustified inducement of a *breach* of contract. *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 154–55 (1989). The Complaint identifies no breach of any agreement induced by any Defendant. What Plaintiff calls "interference" is the filing of fee petitions and the entry of resulting orders. (Compl. ¶¶124–125). Any "disruption" was caused by the state court's rulings, not by Defendants' conduct. To the extent Plaintiff believes Pamela or her attorney agents breached the MSA, such conduct is not actionable

because "a party cannot tortiously interfere with his [or her] own contract." *Douglas Theater Corp. v. Chicago Title & Trust Co.,* 288 Ill.App.3d 880, 884 (1997). Nor can her agents, generally. *Bosch v. NorthShore Univ. Health Sys.*, 2019 IL App (1st) 190070, ¶ 95.

***Finally***, if the Court dismisses Plaintiff's federal claims, it should relinquish supplemental jurisdiction over this state law count. *Rivera v. Allstate Ins. Co.*, 913 F.3d 603, 618 (7th Cir. 2018); 28 U.S.C. §1367(c)(3).

**e. Dismissal Should Be With Prejudice.**

While plaintiffs ordinarily receive one opportunity to amend, that policy yields where "it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015). Such is the case here. No amendment can transform private advocacy into state action, transform a routine fee award into a Fifth Amendment taking, transform the payment of attorneys' fees into a hostile takeover bid, or transform a state court ruling into a tort. Repleading would be futile, especially where the defects—no standing, no state action, no legislative act, no acquisition, no breach—are legal, not factual.

## CONCLUSION

Plaintiff's remedies, to the extent they exist at all, for the state-court rulings he attacks lie in the domestic relations division of the Circuit Court of Cook County, not this Court. Plaintiff's attempts to disrupt those proceedings and intimidate his former wife and her attorneys, while certainly creative, fail legally for all the reasons outlined above. His claims against the Beermann Defendants and Pamela should be dismissed with prejudice.

**WHEREFORE**, Defendants, Jonathan D. Steele, Candace L. Meyers, John M. D'Arco, Beermann LLP, and Pamela Sochor, respectfully seek an order:

A. Dismissing Plaintiff's Complaint with prejudice; and

B. Granting them such other and further relief as this Honorable Court deems equitable and just under the facts and circumstances presented herein.

Dated: August 14, 2026

Respectfully submitted,

**BEERMANN LLP**

*/s/ Matthew D. Elster*

Attorney for Defendants Jonathan D. Steele, Candace L. Meyers, John M. D'Arco, Beermann LLP, and Pamela Sochor

**BEERMANN LLP**
161 N Clark Street #3000
Chicago, IL 60601
312.621.9700
mdelster@beermannlaw.com

## CERTIFICATE OF SERVICE

I certify that on August 14, 2026, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will send notice to all parties and counsel of record.

/s/ *Matthew D. Elster*