**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MATTHEW D. YEAGER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 1:26-cv-06793 |
| | ) | |
| v. | ) | Hon. Sharon Johnson Coleman |
| | ) | |
| | ) | |
| JONATHAN D. STEELE, ESQ., CANDACE L. MEYERS, ESQ., JOHN M. D'ARCO, ESQ., BEERMANN LLP, PAMELA SOCHOR, and KWAME RAOUL, | ) | |
| | ) | |
| Defendants. | ) | |

**MOVING DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO <u>FEDERAL RULE OF CIVIL PROCEDURE 11</u>**

Defendants Jonathan D. Steele, Candace L. Meyers, John M. D'Arco, Beermann LLP, and Pamela Sochor (collectively, "**Moving Defendants**"), by their attorneys, and pursuant to Federal Rule of Civil Procedure 11, respectfully move for an order imposing sanctions on Plaintiff Matthew D. Yeager as follows:

## <u>INTRODUCTION</u>

The purpose of Rule 11 is to deter baseless filings. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). That purpose is on full display here. In the midst of state court custody litigation, Plaintiff sued his former wife and her attorneys, advancing claims which are foreclosed by controlling authority, which were admittedly the product of no investigation, and which rely upon at least one judicial decision that does not exist. Plaintiff's Complaint is not sanctionable merely because

it should be dismissed. It is sanctionable because it advances legal contentions that no objectively reasonable inquiry could support, and because Plaintiff continued to advocate those contentions after Moving Defendants served him with a Rule 11 letter identifying the defects in his Complaint and the authorities foreclosing his claims.

On June 19, 2026, Moving Defendants served Plaintiff with a Rule 11 letter, identifying these defects in Plaintiff's pleading, supplying the governing authority, demanding withdrawal, and affording Plaintiff 21 days to withdraw or correct his Complaint. He did neither.

Instead, he served Moving Defendants with a responsive letter containing more hallucinated cases, filed a baseless motion to disqualify the undersigned counsel (again, containing hallucinated cases), and later threatened, under oath, to institute more baseless lawsuits against his former wife and her attorneys.

To be clear: while Moving Defendants do not seek sanctions for Plaintiff's response letter or his state court testimony—they cite those materials as further evidence of Plaintiff's improper motives and failures to conduct any meaningful diligence before using this Court as a tool to harass his state court opponents, all of which underscores the necessity of a meaningful sanction to deter further frivolous filings.

And while Plaintiff's *pro se* status entitles him to a greater degree of latitude than that afforded to represented parties, it does not permit him to attribute holdings to decisions that do not exist, or to maintain contentions after being shown the authority that forecloses them. Nor does it excuse his admittedly improper motives

in bringing and maintaining this action. Ultimately, Rule 11 binds unrepresented parties no less than counsel, and the same standards apply to unrepresented litigants who sign pleadings. *Vukadinovich v. McCarthy*, 901 F.2d 1439, 1445 (7th Cir. 1990).

## BACKGROUND

As Plaintiff's Complaint makes clear, he and Defendant Sochor have been involved for several years in contested state court domestic relations proceedings concerning their minor daughter. The Beermann Defendants represent Ms. Sochor in the state court matter and have sought—and obtained—court orders awarding interim and prospective attorney's fees from Plaintiff in those proceedings.

On June 8, 2026, just two days before a contested state court fee hearing, Plaintiff filed this action. His six-count Complaint characterizes the state court's fee orders as judicial takings, alleges that his former wife and her private attorneys are state actors, and recasts the fee petitions as a coordinated effort to acquire control of a publicly traded company the Complaint identifies only as "Yeager Corp." The prayer for relief asks this Court to restrain the fee orders' enforcement.

On June 19, 2026, the undersigned served Plaintiff with a notice and demand under Rule 11(c)(2), identifying the authorities foreclosing each claim and the improper purpose evident from the timing and content of the Complaint, stating in express terms that Moving Defendants "affirmatively intend to seek sanctions absent timely withdrawal," and demanding that Plaintiff "withdraw the Complaint in its entirety" within 21 days.[1]

[1] Moving Defendant's June 19, 2026 Rule 11 Safe Harbor Letter is attached hereto as **Exhibit A**.

Instead of doing so, Plaintiff responded by letter dated July 9, 2026, defending each challenged contention, leveling *ad hominem* attacks against the undersigned's law firm, and citing two authorities that do not appear to exist: (i) "*United States v. Duron*, 96 F.4th 1071 (7th Cir. 2024)" and (ii) "*Gonzalez v. Bank of America*, 27 F.4th 1087 (7th Cir. 2022)."[2]

Plaintiff separately moved to disqualify Beermann LLP (Dkt. 12), relying upon more non-existent authority. This Court denied that motion. While obviously not subject to Moving Defendant's previously tendered Rule 11 letter, Plaintiff's continued citations to non-existent authority in his Motion to Disqualify is further evidence of his bad faith litigation strategy and refusal to alter his course of conduct after receiving notice.

Trial in the state court matter commenced on August 6, 2026. During adverse examination, Plaintiff testified as follows:

> Q Anybody else you are planning on suing?
>
> A Yeah.
>
> Q Who?
>
> A I'm not going to tell you.
>
> ***
>
> Q Are you planning on suing anybody as it relates to this case?
>
> A Yes.
>
> Q Who?

---

[2] Plaintiff's July 9, 2026 response letter is attached hereto as **Exhibit B**.

A You [Jonathan Steele], Candace Meyers, John D'Arco, Enrico Marabelli, possibly Mr. Sternfield, possibly Birch Forest.

Q Anyone else?

A Nope.

Q Some of those people you already sued, mainly me, Candace Meyers, John D'Arco, Beermann. You are going to sue us again?

A Yes.

Q For what?

A You are going to find out.

MR. STEELE: Judge, I would ask that you instruct the witness to answer the question in the absence of an objection.

THE COURT: You can answer.

THE WITNESS: I don't know.

Q You are just going to sue us; you don't know what for?

***

THE WITNESS: I don't know.[3]

## LEGAL STANDARD

By presenting a pleading to the court, a party certifies that after an inquiry reasonable under the circumstances it is not presented for an improper purpose; that its legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; and that its factual contentions have evidentiary support. Fed. R. Civ. P. 11(b)(1)–(3). The standard is objective: a litigant's

[3] Relevant portions of the August 6, 2026 transcript of the state court proceedings are attached hereto as **Exhibit C**.

sincere belief is no defense. The obligation is continuing: a party who later advocates a paper recertifies it, and so violates the Rule by advancing a position after it is no longer tenable. Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment.

While a party's *pro se* status "may be taken into account, [] sanctions can be imposed for any suit that is frivolous." *Vukadinovich v. McCarthy*, 901 F.2d 1439, 1445 (7th Cir. 1990). The Rule's bar on monetary sanctions for Rule 11(b)(2) violations applies only to a represented party, Fed. R. Civ. P. 11(c)(5)(A), and does not shield Plaintiff.

Sanctions must be "limited to what suffices to deter repetition of the conduct," and may include nonmonetary directives, a penalty payable to the court, or — "if imposed on motion and warranted for effective deterrence" — payment of the movant's reasonable fees and expenses "directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).

Finally, this Court's Case Management Procedures provide that:

> [a]ny party— counsel and unrepresented parties alike— using Artificial Intelligence ("AI") in connection with the filing of a pleading, motion, or memorandum of law in this Court must comply with Rule 11(b) and Rule 26(g) of the Federal Rules of Civil Procedure. The court prohibits the use AI-generated legal research containing false or inaccurate propositions or citing non-existent cases.

## <u>ARGUMENT</u>

### a. Defendants have Satisfied Rule 11's Safe Harbor Requirement

Rule 11(c)(2) requires that a sanctions motion be served and withheld from filing for 21 days, so the filing party may withdraw or correct the offending pleading.

In the Seventh Circuit, a party may substantially comply with these requirements by issuing a letter or demand, rather than a motion, explaining the grounds for sanctions, providing more than 21 days to remedy the problem, and indicating a clear intention to seek sanctions absent voluntary dismissal. *Nisenbaum v. Milwaukee County*, 333 F.3d 804, 808 (7th Cir. 2003); *Matrix IV, Inc. v. Am. Nat'l Bank & Tr. Co. of Chi.*, 649 F.3d 539, 552–53 (7th Cir. 2011).

**b. Plaintiff Should Be Sanctioned for Advancing Claims He Lacks Standing to Bring (Counts I, IV, V, and VI).**

As outlined in Defendants' Rule 11 letter, and in their Motion to Dismiss, Plaintiff lacks standing to assert claims on behalf of trusts over which he admittedly "exercises no control" and "lacks authority over trust management, distributions, or the disposition of trust assets." (Compl. ¶ 19.)

When confronted with his lack of standing, Plaintiff invoked 760 ILCS 3/1001(b)(3), a statute which enumerates remedies against a trustee, but which does nothing to confer standing upon trust beneficiaries to sue third parties for supposed injuries to a trust. He further relied upon *Gonzalez v. Bank of America*, 27 F.4th 1087 (7th Cir. 2022), **a decision which does not exist**¸ to manufacture standing where none exists.[4] His decision to press on with claims he lacks standing to assert warrants the imposition of sanctions. *Scruggs v. Wauwatosa Sav. Bank*, 723 Fed. Appx. 349, 351 (7th Cir. 2018) (affirming sanctions against *pro se* plaintiff who lacked standing).[5]

[4] Plaintiff's citation to 27 F.4th 1087 points to a 2022 Fifth Circuit decision which involved a criminal defendant convicted of conspiracy to commit healthcare fraud and makes no mention of standing. *United States v. Sheperd*, 27 F.4th 1075 (5th Cir. 2022).

[5] Moving Defendants would further note that in footnote 6 on page 25 of his Complaint, Plaintiff cites *another* nonexistent case in support of Count IV. He cites to "*IRMO Johnston*, 2014 WL 5460610 (Ill.

**c. Plaintiff Should be Sanctioned for Advancing Section 1983 Claims When He Cannot Establish State Action (Counts I–IV).**

As outlined in Defendants' Rule 11 letter, and their Motion to Dismiss, Plaintiff cannot maintain his Section 1983 claims in the absence of state action

Counts I-IV of Plaintiff's Complaint sound under 42 U.S.C. § 1983 and all require state action. As a matter of settled law, and absent narrow circumstances not alleged here, neither private attorneys nor private litigants involved in civil litigation constitute state actors simply by virtue of filing motions and obtaining favorable rulings in custodial litigation. See *Polk County v. Dodson*, 454 U.S. 312, 318–19 (1981); *Hansen v. Ahlgrimm*, 520 F.2d 768, 770 (7th Cir. 1975); *Dennis v. Sparks*, 449 U.S. 24, 28 (1980).

In response to being advised of his failure to plead state action, Plaintiff cited to authority—*Brooks*—which undermines his position, as it reaffirms that conclusory allegations, like the ones he advances here, remain insufficient post-*Iqbal*. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

His new accusations of "ex parte communications" and "illicit coordination with the state court" found in his letter appear nowhere in his Complaint. His decision to press on with his section 1983 claims in the absence of any hint of state action warrants the imposition of sanctions. See *Pettengill v. Cameron*, 17-CV-677-BBC, 2018 WL 626379, at *3 (W.D. Wis. Jan. 30, 2018) (imposing Rule 11 where plaintiffs continued to advance frivolous section 1983 claims).

---

App. Ct.)" which does not exist. Plaintiff's Westlaw citation directs to *Medicus Ins. Co. v. Cross*, 5:13CV145, 2014 WL 5460610 (N.D.W. Va. Oct. 27, 2014), an opinion in a West Virginia federal matter adjudicating a motion to dismiss.

**d. Lack of State Action Aside, Plaintiff Should be Sanctioned for Advancing Legally Baseless Claims (Counts I-IV).**

Even assuming this Court excuses Plaintiff's decision to proceed on his section 1983 claims despite a clear absence of state action, each of his section 1983 claims fails substantively, as well, and never should have been brought.

Count I, which asserts a takings claim, asks this Court to recognize a cause of action that no federal court has ever recognized in over a decade following *Stop the Beach*. See *Pavlock v. Holcomb*, 35 F.4th 581, 587 (7th Cir. 2022). Moreover, insofar as a takings claim requires the appropriation of private property for public use, there is no conceivable basis in which a private civil litigant is ordered to pay another private civil litigant's attorneys' fees could rise to a judicial taking. Plaintiff cannot articulate a good-faith argument that being ordered to pay his former wife's attorneys' fees is tantamount to the taking of private property for the public. His decision to press on with a claim wholly unwarranted by the law warrants the imposition of sanctions.

Count II claims a violation of procedural due process, that is a deprivation of Plaintiff's right to notice and an opportunity to be heard in the state court. By his own admission, Plaintiff received procedural due process, aggressively litigating the fee petitions in the domestic relations proceedings. (Compl. ¶¶24, 71-73, 76).

Count III claims a substantive due process violation. Granting it would not only require this Court to find that Defendants were state actors, but that their seeking and obtaining an interim fee award in matrimonial litigation "shocks the conscience" and rises to the same level of egregiousness and outrageousness as an

officer's deliberate indifference to the medical needs of a pretrial detainees (*City of Revere v. Massachusetts Gen. Hospital,* 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983)) or the forcible pumping of a criminal suspect's stomach (*Rochin v. California*, 342 U.S. 165, 172–73, 72 S.Ct. 205, 96 L.Ed. 183 (1952)).

Count IV claims Defendants violated the Contract Clause of the Constitution. However, for more than a century, our courts have clearly held that such claims may be "directed only against impairment by legislation and not by judgments of courts." *Tidal Oil Co. v. Flanagan*, 263 U.S. 444, 451 (1924). Plaintiff's decision to press this claim in the face of literally over 100 years of adverse authority should not be excused.

**e. Plaintiff Should be Sanctioned for Advancing a Section 13(d) Claim Foreclosed by His Own Authority (Count V)**

In Count V of his Complaint, Plaintiff posits that Defendants, by seeking interim attorneys' fees from him, are in reality making a hostile bid for control of "Yeager Corp." (aka Hub Group, Inc.) and are therefore subject to the requirements of section 13(d) of the Securities Exchange Act. As outlined in Defendants' Rule 11 letter and in their Motion to Dismiss, this claim is indisputably foreclosed by Plaintiff's own cited authority, *Edelson v. Ch'ien*, 405 F.3d 620 (7th Cir. 2005), which limits private section 13(d) actions to those which arise "in the context of a tender offer or aggregation of shares for the purpose of controlling the issuer." 405 F.3d at 634. He pleads no tender offer, no contest for control, and no acquisition of a single share of "Yeager Corp." by any Defendant, while affirmatively alleging that non-party trusts hold the securities. (Compl. ¶ 116.) Beneficial ownership requires voting or investment power. 17 C.F.R. § 240.13d-3(a); *Bath Indus., Inc. v. Blot*, 427 F.2d 97,

109 (7th Cir. 1970). Seeking an award of attorneys' fees from a non-shareholder is not a takeover bid.

In his Response letter, Plaintiff suggests that "[a]ctually holding the shares is not a requirement," citing *GAF Corp. v. Milstein*, 453 F.2d 709 (2d Cir. 1971), in support of his theory. *GAF*, which involved "four shareholders who together own 10.25% of an outstanding class of securities and allegedly agreed to pool their holdings to effect a takeover of GAF," does not stand for such a proposition. Unlike defendants here—who are alleged to own 0 "Yeager Corp." shares—the *GAF* defendants already owned a significant portion of the subject business. An inapplicable 1971 out-of-circuit decision cannot render a claim foreclosed by recent and binding Seventh Circuit authority "warranted by existing law."

**f. Plaintiff Should be Sanctioned for Advancing a State Law Claim Barred by the Absolute Litigation Privilege (Count VI)**

In Count VI of his Complaint, Plaintiff seeks to hold Defendants liable under a state-law theory of tortious interference with contract premised upon their fee petitions and resulting awards. As Defendants noted in their Rule 11 letter, and in their motion to dismiss, this claim is barred by Illinois' absolute litigation privilege which shields attorney litigation conduct from tort liability. See *Scarpelli v. McDermott Will & Emery LLP*, 2018 IL App (1st) 170874, ¶¶ 18–19, 25.

In his Response letter, Plaintiff attempts to distance himself from this privilege by baldly citing fraud and conspiracy. Such claims, however, appear nowhere in his Complaint; nor are they supported by *Edelman* or *Stein*, the two cases he cites. In any event, Illinois law is clear that simply recasting litigation conduct as "fraud" is

precisely what the privilege forbids. *Johnson v. Johnson & Bell, Ltd.*, 2014 IL App (1st) 122677, ¶¶ 16–18 ("[t]he absolute privilege would be meaningless if a simple recasting of the cause of action…could void its effect.").

**g. Plaintiff's Complaint was Filed and Maintained for an Improper Purpose.**

A party violates Rule 11(b)(1) where the circumstances show that he filed a pleading with the purpose of harassing, causing unnecessary delay, or needlessly increasing the cost of litigation. Fed. R. Civ. P. 11(b)(1). The facts here bear all the hallmarks of a Rule 11(b)(1) violation.

First, Plaintiff filed this suit just two days before a state court hearing, explicitly referencing the state court's anticipating ruling as the "Second Judicial Taking" and naming his former wife and her attorneys—all of whom are involved in the state court proceedings—as defendants.

Second, he then ask this Court to restrain the Moving Defendants from enforcing that "Second Judicial Taking," (i.e. from obtaining judicially ordered relief in a pending state court action).

Third, a non-trivial portion of his Complaint is devoted to irrelevant (and false) attacks on the undersigned counsel's firm and its alleged conduct in other cases, allegations which have precisely zero bearing on his claims.

Fourth, Plaintiff's liberal use of hallucinated citations—in his Complaint, in his Rule 11 response, and in his Motion to Disqualify—not only suggest a complete failure to comply with Rule 11(b)(2), but have forced the Moving Defendants to incur

time and expense cite-checking Plaintiff's filings, thereby "needlessly increase the cost of litigation."

Finally, this Court cannot ignore Plaintiff's own testimony, in which he indicated, under oath, an intention to file more lawsuits against these same defendants, but, admittedly, did not know what for. A litigant who has selected his defendants but not his claims is not pursuing a grievance; he is using the filing of lawsuits as the remedy itself. Again, Rule 11 is designed to deter frivolous litigation, and frivolous litigation is precisely what Plaintiff has promised.

**h. The Sanction Requested.**

Rule 11(c)(4) limits a sanction to what suffices to deter repetition, and may include monetary fines payable to the Court, nonmonetary directives (such as filing restrictions), and awards of attorneys' fees.

A monetary sanction alone is unlikely to accomplish deterrence here. Plaintiff is possessed of substantial means and has already stated under oath that he intends to file further actions against these same individuals without knowing what he will allege. Rule 11(c)(4) authorizes non-monetary directives, and this Court has authority to curb abusive filings "so long as the sanction is tailored to the abuse." *Support Sys. Int'l, Inc. v. Mack*, 45 F.3d 185, 186 (7th Cir. 1995); *In re Chapman*, 328 F.3d 903, 905 (7th Cir. 2003). Plaintiff named his intended targets on the record, offering a roadmap for a narrow deterrent sanction under Rule 11(c)(4).

Moving Defendants therefore request an order: (i) finding each of Plaintiff's claims individually violative of Rule 11(b)(2) and collectively violative of Rule 11(b)(1);

(ii) directing Plaintiff to pay the reasonable attorney's fees and expenses incurred by Moving Defendants in addressing those contentions, together with the reasonable expenses incurred in preparing and presenting this motion as authorized by Rule 11(c)(2); and (iii) requiring Plaintiff to obtain leave of court before filing any further civil action in this District against any Moving Defendants or other Beermann LLP employees

## CONCLUSION

For the reasons articulated above, and in their Motion to Dismiss, Moving Defendants respectfully request that this Court impose Rule 11 sanctions against Plaintiff and grant them such further relief as the Court deems necessary to deter repetition.

Respectfully submitted,

**BEERMANN LLP**

By: */s/ Matthew D. Elster*

**BEERMANN LLP**
161 N. Clark Street, Suite 3000
Chicago, Illinois 60601
312.621.9700 | mdelster@beermannlaw.com

## CERTIFICATE OF SERVICE

I certify that on August 14, 2026, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will send notice to all parties and counsel of record.

/s/ *Matthew D. Elster*