BC

FILED
8/26/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

EE

**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MATTHEW D. YEAGER, | |
| Plaintiff, | Civil No. 1:26-cv-06793 |
| v. | District Judge Sharon Johnson Coleman |
| JONATHAN D. STEELE et al., | **PLAINTIFF'S MOTION FOR RULE 59(E) ALTERATION** |
| Defendants. | |

Plaintiff Matthew D. Yeager for his Motion for Rule 59(e) Alteration Directed at the Court's Ruling on August 24, 2026, hereby states as follows:

## INTRODUCTION AND PROCEDURAL BACKGROUND

The request for injunctive relief advanced by Plaintiff under his proposed TRO does not belong to the category of shared enforcement of federal rights with the states, but rather to the protection of federal-court jurisdiction and petitioning activity. The Court has imputed the former category here, where state and federal courts share in the vindication of federal rights. In actuality, the request at bar concerns **federal-litigation consequences**, which fall within the exclusive jurisdiction of the federal courts.

Rule 59(e) exists to allow the Court to revisit a ruling that may have rested on an inadvertent factual or legal premise[1] and, applied here, to reconsider the federal-jurisdiction and Petition Clause issues the ruling entered on August 24, 2026 did not reach. Notably, the **threshold question of irreparable harm** must be revisited for reasons detailed *infra*.

[1] The Court ordered Plaintiff to explain the reasoning underlying or simply withdraw his alleged sealing request, however Plaintiff has not made any sealing request, invocation of Local Rule 26.2 or advocated for confidentiality as to his Motion for TRO or indeed with respect to any other filing in this matter. Therefore, there is no way for Plaintiff to comply with the Court's directive propounded under ECF 22.

## I. The irreparable harm analysis cannot proceed under *Harris*.

The Court cites *American Hospital Ass'n v. Harris*, 625 F.2d 1328 (7th Cir. 1980), for the proposition that monetary injuries are ordinarily insufficient to constitute irreparable harm. However, *Harris* expressly concerns purely economic injuries. The Seventh Circuit has repeatedly distinguished *Harris* where the alleged injury **also implicates constitutional rights**. See *Christian Legal Society v. Walker*, 453 F.3d 853 (7th Cir. 2006), *Courthouse News Service v. Brown*, 908 F.3d 1063 (7th Cir. 2018**)**, *Backpage.com, LLC v. Dart*, 807 F.3d 229 (7th Cir. 2015) (First Amendment breach is irreparable); *Planned Parenthood of Indiana v. Comm'r*, 699 F.3d 962 (7th Cir. 2012) (Denial of a constitutional right is irreparable, irrespective of the financial dimension of the injury). *Planned Parenthood* implements a direct doctrinal override of *Harris*[2]: the constitutional component confers irreparable harm, even if there is compensation later.

The proposed TRO here does not allege a routine monetary loss; it alleges a penalty imposed for the exercise of federal-litigation rights. The loss or chilling of First Amendment freedoms constitutes irreparable harm, even when expressed through monetary consequences. See *Elrod v. Burns*, 427 U.S. 347 (1976) (The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury); *Colorado Republican Federal Campaign Committee v. Federal Election Commission*, 518 U.S. 604 (1996) (Monetary costs and burdens on political parties have a stifling effect on the ability of the party to do what it exists to do); *Speech First, Inc. v. Killeen*, 968 F.3d 628 (7th Cir. 2020) (A chilling effect on speech is itself a First Amendment injury); *Courthouse News Service v. Brown*, 908 F.3d 1063 (7th Cir. 2018) (Burdens – even monetary ones – on court-access violate the First Amendment).

---

[2] Ultimately, *Planned Parenthood* leaves *Harris* completely intact for **pure economic injuries**. However, for unconstitutional coercion such as a state imposing a financial penalty for exercise of a constitutional rights (such as here, wherein Plaintiff's rights under the Petition Clause are set to be penalized by the State of Illinois) the hurdle of irreparable harm is surmounted.

II. The irreparable harm analysis under *Winter* requires contextual inquiry.

The Court also cites *Winter v. NRDC*, 555 U.S. 7 (2008), for the proposition that injunctive relief requires a likelihood of irreparable injury. *Winter* emphasizes that courts must evaluate irreparable harm in light of the specific interests protected by federal law. Here, the interests protected are the federal judiciary's authority over federal-litigation consequences and the constitutional right to petition the federal courts without state-court penalty. *Winter* does not hold that monetary consequences are never irreparable; **it holds that courts must assess irreparable harm in context.** When the alleged harm is a penalty imposed for federal-court litigation, *Winter* reinforces – rather than undermines – the need for injunctive protection.

*Winter* emphasizes that irreparable-harm analysis is substantive: courts must evaluate the injury "in light of the purposes of the statute and the rights being protected," rather than by the label attached to the harm. **The chilling of First Amendment activity is irreparable regardless of whether the mechanism of injury is monetary**. Applied here, the harm alleged is not a mere financial loss but a penalty imposed for federal-court petitioning, which is irreparable harm.

III. State courts cannot adjudicate federal litigation consequences.

The Supreme Court is clear on this issue: "[w]hile Congress has seen fit to authorize courts of the United States to restrain state court proceedings in some special circumstances, it has in no way relaxed the old and well established judicially declared rule that **state courts are completely without power to restrain federal court proceedings** in *in personam* actions like the one here." (emphasis supplied) *Donovan v. City of Dallas*, 377 U.S. 408, 412 (1964).

The structural rule of Federalism articulated in *Donovan* permeates later Supreme Court decisions: federal control is exclusive once jurisdiction attaches, *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982); federal supervisory authority over federal litigation conduct,

including sanctions and fee consequences, is exclusive, *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991); federal courts alone impose consequences for federal filings, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990); orders entered without jurisdiction are void, *Archdiocese of San Juan v. Feliciano*, 140 S. Ct. 696 (2020); and jurisdiction cannot be created by court error, *The Hain Celestial Group, Inc. v. Palmquist*, 607 U.S. 421 (2026). Federal courts possess exclusive authority over their proceedings. State courts cannot intrude into that domain.

IV. A recent injunction by District Judge Kennelly favors granting the TRO.

District Judge Kennelly's injunctive grant in *American Academy of Pediatrics v. Attorney General of Florida,* No. 1:26-cv-2401 (N.D. Ill. June 2, 2026) is grounded in a structural principle: when a state proceeding threatens federal rights or federal jurisdiction, federal courts may intervene — even if the state proceeding is facially legitimate. A request to restrain a private litigant from seeking state consequences for federal litigation is well within scope[3].

Because the fee petition asks the state to impose monetary penalties for federal-court petitioning activity, Plaintiff has demonstrated a strong likelihood of success on the merits. Strictly evaluating District Judge Kennelly's injunction factor test[4], each factor weighs more strongly in favor of federal protection here than in the case where Judge Kennelly granted relief. To wit, that factor test evaluates whether there is (a) misrepresentation or distortion of federal rights, (b) retaliatory or punitive use of state proceedings, (c) interference with federal jurisdiction, and (d) lack of a legitimate state interest in adjudicating federal-rights consequences.

[3] Moreover, as highlighted under the Motion for TRO, the Anti-Injunction Act is not applicable here: Plaintiff seeks restraints against Defendant Sochor only, not as to the state court proceeding. The issue of federal fees for this suit, moreover, is of absolutely no moment as to the adjudication of custody issues!

[4] The Kennelly injunction factor test provides a complementary framework that works in tandem with *Winter*: *Winter* addresses **whether** federal intervention is warranted, and Kennelly's framework addresses **why** federal intervention is appropriate when federal-litigation rights are threatened by state-court proceedings.

## CONCLUSION

Because the Court's engagement with Plaintiff's proposed TRO is recent, Rule 59(e) provides the appropriate mechanism for ensuring that the motion is evaluated on the basis of its actual contents and under the governing Federalism and constitutional frameworks.

Plaintiff therefore respectfully requests that this Court vacate its ruling of August 24, 2026 and grant the proposed TRO filed in this matter by Plaintiff on August 22, 2026.

Dated: **August 27, 2026**

Respectfully submitted,

/s/ Matthew D. Yeager, In Pro Se
1047 Hickory Drive
Western Springs, IL 60558
Email: matthewyeager2024@gmail.com
Tel: (630) 862-1123

## CERTIFICATE OF SERVICE

Plaintiff certifies that he has electronically filed this paper with the Court and upon opposing counsel which have filed their appearance in this matter.

Dated: **August 27, 2026**

/s/ Matthew D. Yeager