BC

FILED
10/1/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

MAM

**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MATTHEW D. YEAGER,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN D. STEELE et al.,<br><br>Defendants. | Civil No. 1:26-cv-06793<br><br>District Judge Sharon Johnson Coleman<br><br>**PLAINTIFF'S OPPOSITION TO NON-STATE DEFENDANTS' MOTION TO DISMISS** |

Plaintiff Matthew D. Yeager for his opposition to the motion to dismiss brought by the non-state defendants, hereby states as follows:

## INTRODUCTION

Plaintiff's complaint more than plausibly alleges statutory and constitutional violations, and Defendants' motion to dismiss rests on misreadings of controlling doctrine, improper factual assumptions, and abstention theories that do not apply. At this stage, the Court accepts well-pleaded allegations as true and draws reasonable inferences in Plaintiff's favor, yet Defendants repeatedly ask the Court to resolve factual disputes, narrow federal statutes beyond their text, and treat contested matters as if they were established. Their reliance on *Edelson* is misplaced: that case addresses standing and remedies, not the definition of 'acquisition' under Section 13(d), and it does not limit liability to tender offers or contests for control.

The governing acquisition doctrine—set out in *Drexel Burnham* and SEC rules – recognizes that coordinated plans, arrangements, or understandings to obtain or influence control constitute an acquisition requiring disclosure, even without taking title to shares. The complaint alleges precisely that type of coordinated conduct.

The constitutional claims are likewise well-pleaded. The challenged 'leveling the playing field' statutes, as applied, impute financial capacity based on assets Plaintiff does not own or control, raising serious due process and Fourteenth Amendment fairness concerns. Ability-to-pay determinations must rest on a litigant's own property interests, not legally irrelevant third-party resources, and the complaint alleges coercive financial burdens imposed without adequate notice or a meaningful opportunity to contest them. Finally, Defendants' abstention arguments fail. Younger does not apply because the challenged conduct is not part of an ongoing state enforcement proceeding that is quasi-criminal in nature, initiated by the State in its sovereign capacity, as limited by *Sprint Communications v. Jacobs*, 571 U.S. 69 (2013). Rooker-Feldman is foreclosed by the Seventh Circuit's recent clarification in *Gilbank v. Wood County DHS*, 92 F.4th 569 (7th Cir. 2024), which limits the doctrine to de facto appeals of final state-court judgments. Plaintiff asserts independent federal statutory and constitutional claims and seeks relief for injury caused by Defendants' conduct, not by a state judgment. Because the complaint states claims upon which relief can be granted, the motion to dismiss should be denied.

## LEGAL STANDARD

Under Rule 12(b)(6), dismissal is appropriate only when the complaint fails to state a claim that is plausible on its face, and the Court must apply that standard with the well-established constraints that Defendants' motion repeatedly ignores.

a. The Court must accept all well-pleaded facts as true. A Rule 12(b)(6) motion is not an evidentiary contest. The Court accepts the complaint's factual allegations as true and draws all reasonable inferences in Plaintiff's favor.

b. Plausibility does not require evidentiary proof. A complaint survives when

it alleges facts that, taken as true, state a claim that is plausible—not proven, not probable, not supported by exhibits. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

c. The Court may not weigh competing factual theories. Where parties offer competing explanations, the Court must adopt Plaintiff's version unless facially impossible.

d. Judicial notice of public records. On 12(b)(1) and 12(b)(6), courts may take judicial notice of public records that are referenced in the complaint and central to the claims, without converting to Rule 56.

## ARGUMENT

### I. The Section 13(d) claim is plausibly alleged.

a. *Edelson does not limit liability to tender offers.*

Defendants rely heavily on *Edelson v. Ch'ien*, 405 F.3d 620 (7th Cir. 2005), but *Edelson* did not construe the meaning of "acquire," define beneficial ownership, or hold that Section 13(d) applies only to tender offers, proxy contests, or traditional contests for corporate control. Rather, *Edelson* addressed who may enforce Section 13(d) and the remedies available for a disclosure violation. The portions of *Edelson* cited by Defendants describe the facts before that court; they do not establish the outer boundaries of Section 13(d). Nothing in *Edelson* narrows the statute's disclosure requirements where a plaintiff plausibly alleges coordinated action giving rise to group status and beneficial ownership under SEC Rules 13d-3 and 13d-5.

b. *Section 13(d) reaches indirect acquisition and coordinated activity.*

Section 13(d) applies to persons who acquire beneficial ownership "directly or

indirectly." Consistent with that language, SEC Rules 13d-3 and 13d-5 recognize that beneficial ownership and group status may arise through arrangements, understandings, or coordinated conduct rather than through a single formal stock purchase. Rule 13d-5(b)(1) provides that when two or more persons agree to act together for the purpose of acquiring, holding, voting, or disposing of equity securities, the group is deemed to have acquired beneficial ownership of the securities beneficially owned by its members.

Courts therefore look beyond formalities and examine whether the alleged facts support a plausible inference of coordinated action directed at the ownership, voting, or control of securities. See, e.g., *SEC v. Drexel Burnham Lambert Inc.*, 837 F. Supp. 587 (S.D.N.Y. 1993). The question at the pleading stage is not whether Plaintiff has already proven the existence of a Section 13(d) group but whether the alleged facts plausibly support such an inference.

Furthermore, *Drexel Burnham* guides us that 'acquisition' includes direct or indirect means, including plans, arrangements, understandings, or coordinated actions undertaken for the purpose of obtaining or influencing control. This flows from the text 'directly or indirectly' and from Rule 13d-5(b)(1). *Drexel Burnham* rejects the notion that Section 13(d) is triggered only upon consummated purchases.

c. *The complaint plausibly alleges group formation.*

The Complaint satisfies that standard. Rule 13d-5 does not require a written contract, formal partnership agreement, or completed transaction. An agreement may be express or implied and may be inferred from circumstantial evidence, including coordinated conduct, common objectives, timing, and concerted action.

Here, the Complaint alleges coordinated conduct among Defendants directed

toward obtaining influence over, or exercising rights associated with, a block representing 62.2% of the voting power of Yeager Corp. The Complaint further alleges common objectives, coordinated actions, and a shared course of conduct involving those voting interests. Taking those allegations as true and drawing reasonable inferences in Plaintiff's favor, the Complaint plausibly alleges the existence of a group under Rule 13d-5.

Defendants' contrary arguments largely dispute Plaintiff's characterization of the facts and the inferences to be drawn from them. Those issues cannot be resolved on a Rule 12(b)(6) motion. Whether Defendants in fact acted pursuant to a common plan, whether any agreement existed, and whether their conduct resulted in beneficial ownership within the meaning of Section 13(d) are factual questions not appropriately decided at the pleading stage.

Finally, Plaintiff seeks prospective injunctive relief requiring compliance with federal disclosure obligations. *Edelson* recognizes the availability of such relief in appropriate circumstances. Defendants' Noerr-Pennington defense likewise presents factual questions concerning purpose and conduct that cannot defeat a plausibly pleaded Section 13(d) claim on the face of the Complaint.

The operative theory is not that Defendants merely participated in litigation; it is that Defendants acted in concert with respect to a voting bloc representing 62.2% of Yeager Corp.'s voting power and therefore became subject to the disclosure obligations imposed by Section 13(d) and Rule 13d-5.

## II. Constitutional claims withstand scrutiny at this stage.

### a. The Complaint Plausibly Due Process Violations.

The Due Process claims are not based on disagreement with a state-court ruling.

Rather, they challenge the alleged use of Illinois fee-shifting procedures to attribute to Plaintiff financial resources that Plaintiff neither owns, controls, nor may access. Complaint ¶¶ 22-28.

The Complaint alleges that Defendants repeatedly relied upon assets held in irrevocable spendthrift trusts to establish Plaintiff's purported ability to pay attorney's fees, despite Plaintiff's lack of ownership, control, or present access to those assets. The Complaint further alleges that the resulting financial obligations were imposed through summary procedures that denied a meaningful opportunity to contest the underlying assumptions regarding ownership, control, and liquidity.

Those allegations are sufficient at the pleading stage. Procedural due process requires notice and a meaningful opportunity to be heard before the State deprives a person of property. See *Mathews v. Eldridge*, 424 U.S. 319 (1976). Accepting the allegations as true, the Complaint plausibly alleges that fee awards were predicated upon property interests Plaintiff does not possess and were imposed without constitutionally adequate procedures for contesting that premise.

The Complaint also states a substantive due process claim. At a minimum, Plaintiff plausibly alleges arbitrary governmental action where legal obligations are imposed based upon assets belonging to third-party trusts rather than assets owned or controlled by Plaintiff himself. Whether Defendants can justify those determinations presents factual and legal questions that cannot be resolved on a motion to dismiss.

b. *The Complaint Plausibly Alleges Irrational Application.*

The Equal Protection claim is likewise sufficient at the pleading stage. Plaintiff does not contend that he is a member of a suspect class. Rather, the claim is that the

statutory scheme was applied in an arbitrary and irrational manner by attributing to Plaintiff assets legally owned by third parties and unavailable for Plaintiff's use while measuring other litigants' financial capacity based upon resources they actually control.

Under rational-basis review, government action must still bear a rational relationship to a legitimate governmental objective. The Complaint alleges that Defendants and state actors treated inaccessible trust assets as though they were Plaintiff's own property for purposes of determining ability to pay attorney's fees. Taking those allegations as true, the Complaint plausibly alleges an irrational classification and unequal application of the governing standards.

At this stage, Plaintiff need not prove the absence of a rational basis. Plaintiff need only allege facts supporting a plausible inference that the challenged application of the statutory scheme lacked a rational connection to Plaintiff's actual financial circumstances.

c. *The Complaint plausibly alleges impairment.*

The Complaint alleges impairment of two pre-existing contractual arrangements: (1) the 2021 Marital Settlement Agreement containing an express waiver of claims to the Yeager Trusts, and (2) irrevocable trust instruments containing spendthrift and asset-protection provisions.

The constitutional injury alleged is not a private breach of contract. Rather, Plaintiff alleges that Defendants invoked state-created procedures to obtain judicial orders that effectively disregard and impair contractual rights established by those instruments. See *Sveen v. Melin*, 584 U.S. 811 (2018).

Whether the alleged impairment is sufficiently substantial, whether it serves a

legitimate public purpose, and whether the means employed are reasonable and appropriate are merits questions not suitable for resolution on a Rule 12(b)(6) motion. Accepting the allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Complaint plausibly alleges that state action was used to undermine vested contractual rights and expectations embodied in the Marital Settlement Agreement and the trust instruments.

## **III. Defendants Rely On Matters Outside The Complaint.**

Defendants' motion is framed as a Rule 12 challenge, yet it repeatedly relies upon factual assertions outside the Complaint. Among other things, Defendants assert that: (1) state-court filings establish facts favorable to Defendants; (2) the June 10, 2026 order demonstrates the absence of relevant findings; (3) Plaintiff exercises no control over the Yeager Trusts; (4) Defendants' conduct constituted routine litigation activity; (5) Plaintiff received constitutionally adequate process; and (6) no Defendant acquired beneficial ownership sufficient to trigger Section 13(d). Each contention depends upon Defendants' interpretation of facts and public records rather than the allegations appearing on the face of the Complaint.

At the pleading stage, the Court must accept Plaintiff's well-pleaded allegations as true and draw reasonable inferences in Plaintiff's favor. To the extent Defendants invite the Court to consider materials beyond the Complaint, the Court may likewise consider documents referenced in the Complaint, central to the claims, and matters properly subject to judicial notice. See *Ennenga v. Starns*, 677 F.3d 766 (7th Cir. 2012); *Geinosky v. City of Chicago*, 675 F.3d 743 (7th Cir. 2012); Fed. R. Evid. 201. Where a factual challenge is asserted, courts may also consider public records without converting the

proceeding to summary judgment. See *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440 (7th Cir. 2009).

Plaintiff therefore submits **Exhibit 1**, a September 9, 2026 state-court order referenced in Complaint ¶¶ 24-25 and central to Plaintiff's allegations concerning joint action and the operation of the challenged fee-shifting procedures. Plaintiff does not offer the order for the truth of any domestic-relations findings. Rather, Plaintiff asks the Court to take notice of the order's existence, procedural posture, and operative terms, including its invocation of 750 ILCS 5/508(a)(6), its provision for summary adjudication, and the fact that the proposed order submitted by private counsel was entered through judicial process.

The relevance of **Exhibit 1** is heightened by developments occurring after Plaintiff's earlier request for temporary injunctive relief. Plaintiff previously sought a TRO concerning proceedings then scheduled for June 10, 2026, which this Court denied on abstention and equitable grounds without reaching the merits of Plaintiff's state-action allegations. See Dkts. 22 and 24. The September 9, 2026 order reflects the subsequent maturation of the factual circumstances underlying those allegations. Plaintiff does not ask the Court to resolve those facts in Plaintiff's favor. Plaintiff submits Exhibit 1 solely as a judicially noticeable public record bearing on the plausibility of the Complaint and in response to Defendants' reliance on comparable state-court materials.

## IV. The Complaint meets *Lugar* requirements.

a. *The Complaint Plausibly Alleges Both Elements Of Lugar.*

Counts I-IV arise under 42 U.S.C. § 1983. Defendants argue that private attorneys and a private litigant cannot be state actors. That argument overlooks the well-established

principle that private parties may act under color of state law when they invoke state-created procedures and obtain significant assistance from state officials in effecting the challenged deprivation.

Under *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982), state action exists where: (1) the challenged deprivation is caused by the exercise of a right or procedure created by the State, and (2) the private party acted jointly with state officials or obtained significant aid from them. See also *Dennis v. Sparks*, 449 U.S. 24 (1980).

**PRONG 1 – STATE-CREATED PROCEDURE**

The first *Lugar* element is plausibly alleged. Complaint ¶ 22 alleges that 750 ILCS 5/501(c-1)(1) and 508 authorize interim and prospective fee awards through summary procedures. Complaint ¶ 23 alleges that Defendants invoked those procedures and relied upon trust assets as purported evidence of Plaintiff's ability to pay. Complaint ¶ 2 alleges that resulting fee obligations become enforceable through judicial process and for the benefit of private parties.

The September 9, 2026 Order attached as Exhibit 1 is consistent with those allegations. The order expressly references a "Petition for Interim and Prospective Attorney's Fees and Costs Pursuant to 750 ILCS 5/508(a)(6)" and provides that the matter shall proceed "on a summary basis." Plaintiff relies on the order only as a public record illustrating the operation of the statutory mechanism described in the Complaint.

**PRONG 2 - JOINT ACTION**

The second *Lugar* element is likewise plausibly alleged. Complaint ¶ 24 alleges a series of coordinated fee petitions seeking progressively larger fee awards. Complaint ¶ 25 alleges that the state court granted an award exceeding the amount requested and did

so based upon consideration of trust assets that Plaintiff alleges he neither owns nor controls. Complaint ¶ 28 alleges that nonpayment may result in coercive judicial enforcement, including contempt proceedings. Complaint ¶¶ 55, 62, and 64 allege coordinated conduct between private parties and judicial enforcement mechanisms sufficient to transform private requests into legally enforceable obligations.

Defendants characterize these events as ordinary litigation activity. At the pleading stage, however, the Court must draw reasonable inferences in Plaintiff's favor. The relevant question is not whether Defendants ultimately will prevail on their characterization of the facts but whether the Complaint plausibly alleges that private actors invoked state-created procedures and obtained significant judicial assistance in effecting the challenged deprivation. The Complaint does so.

The September 9, 2026 Order further supports the plausibility of that theory. Plaintiff does not contend that the notation "Order Prepared By BEERMANN LLP" alone establishes state action. Rather, the significance of the order is that it reflects the alleged interaction between private applications for relief and judicial enforcement mechanisms that lies at the center of Plaintiff's *Lugar* theory.

b. *The prior motion for TRO did not Resolve Lugar Allegations.*

Plaintiff previously sought temporary injunctive relief relating to proceedings then scheduled for June 10, 2026. The Court denied that request on abstention and equitable grounds rather than on the merits of Plaintiff's §1983 claims. A denial of emergency relief does not constitute a determination that a complaint fails to state a claim, nor does it resolve disputed factual issues for purposes of Rule 12(b)(6).

See *Winter v. NRDC*, 555 U.S. 7 (2008). A request for preliminary injunctive

relief requires showings substantially different from the plausibility standard governing a motion to dismiss.

Plaintiff therefore references the prior TRO proceedings only to clarify procedural history and to explain that the factual circumstances underlying the Complaint have continued to develop. The September 9, 2026 Order constitutes an additional public record bearing on the plausibility of Plaintiff's allegations; it is not offered as a basis for reconsideration of the Court's prior ruling.

## **V. Abstention doctrines are not available here.**

a. *Younger predicates are not satisfied.*

Defendants invoke *Younger*, but the Supreme Court has made clear that the doctrine extends only to a narrow category of proceedings. In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Court identified three exceptional categories: (1) ongoing criminal prosecutions; (2) certain civil enforcement proceedings that are quasi-criminal in nature and initiated by the State in its sovereign capacity; and (3) proceedings involving a state's ability to perform essential judicial functions.

This case does not fit within any of those categories. Plaintiff challenges actions undertaken by private parties and their attorneys in connection with fee-shifting proceedings under 750 ILCS 5/508(a)(6). Those proceedings are not criminal. They were not initiated by the State. They do not seek to sanction violations of state law on behalf of the sovereign. Nor do Defendants identify any sovereign enforcement interest comparable to the civil enforcement proceedings discussed in *Sprint*.

The September 9, 2026 Order reflected in **Exhibit 1** confirms the private nature of the proceedings. The order concerns a petition for fees brought by private parties under a

state statute and scheduled for summary adjudication. Its existence does not transform a private fee dispute into the type of quasi-criminal enforcement proceeding required by *Sprint*. Accordingly, Defendants have not satisfied the threshold requirements necessary to invoke *Younger* abstention.

b. *Rooker-Feldman requirements are not satisfied.*

The Supreme Court has repeatedly emphasized that the Rooker-Feldman doctrine is "narrow" and confined to a limited class of cases. See *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005). The Seventh Circuit recently reaffirmed that limitation in *Gilbank v. Wood County DHS*, 92 F.4th 569 (7th Cir. 2024).

Rooker-Feldman applies only where a federal plaintiff: (1) lost in state court; (2) complains of injuries caused by a state-court judgment; (3) seeks federal review or rejection of that judgment; and (4) filed suit after the relevant state-court judgment was entered. None of those circumstances is present here.

First, Plaintiff does not seek appellate review of any state-court ruling. The Complaint asserts independent federal claims under Section 13(d) and 42 U.S.C. §1983 arising from Defendants' alleged conduct.

Second, the alleged injuries are not caused by a state-court judgment itself. The Complaint alleges injuries arising from Defendants' conduct, their use of state procedures, and their alleged failure to comply with federal law. Claims predicated upon an opposing party's conduct are not transformed into de facto appeals merely because that conduct occurred during state litigation.

Third, Plaintiff does not ask this Court to vacate, modify, or overturn any state-court order. The requested relief consists of damages and prospective relief arising

under federal law.

Fourth, the chronology required by Rooker-Feldman is absent. The federal action was filed before the September 9, 2026 Order relied upon by Defendants. Moreover, that order is interlocutory in nature, denying a motion under 735 ILCS 5/2-619.1 and setting a future hearing date. It is not the sort of final state-court judgment contemplated by Rooker-Feldman.

c. *Domestic relations exception does not strip federal question jurisdiction.*

Defendants' reliance on the domestic relations exception fares no better. The exception is narrow and applies principally to cases seeking the issuance or modification of divorce, alimony, or child-custody decrees. See *Ankenbrandt v. Richards*, 504 U.S. 689 (1992); *Marshall v. Marshall*, 547 U.S. 293 (2006).

Plaintiff does not ask this Court to grant a divorce, alter custody arrangements, or modify support obligations. Nor does Plaintiff seek federal supervision of an ongoing domestic-relations matter. Instead, Plaintiff asserts federal statutory and constitutional claims arising under Section 13(d) and 42 U.S.C. §1983.

The mere fact that those claims arise against the backdrop of domestic-relations litigation does not eliminate federal jurisdiction. Federal courts routinely adjudicate federal questions even when related facts originate in state domestic proceedings. Because Plaintiff seeks relief for alleged violations of federal law rather than a domestic-relations decree, the exception does not apply.

## **VI. The Complaint states claims for relief.**

The Complaint satisfies Rules 8 and 12(b)(6) because it alleges plausible federal claims supported by specific factual allegations. At this stage, the Court's task is not to

determine whether Plaintiff will ultimately prevail, but whether the Complaint contains sufficient factual matter, accepted as true, to state claims that are plausible on their face.

The Section 13(d) claim is plausibly alleged because the Complaint describes coordinated conduct, common objectives, and circumstances supporting an inference of group formation under SEC Rule 13d-5. Defendants' contrary arguments principally concern the inferences to be drawn from the facts and the ultimate merits of Plaintiff's theory.

The constitutional claims are likewise sufficient at the pleading stage. The Complaint alleges that Defendants invoked state-created procedures to impose substantial financial obligations based upon assets Plaintiff allegedly does not own, control, or possess, and that those procedures were implemented through judicial enforcement mechanisms. Those allegations plausibly state Due Process claims and support Plaintiff's related constitutional theories.

Finally, for the reasons discussed above, Defendants have not established any basis for dismissal under *Younger*, *Rooker-Feldman*, or the domestic-relations exception.

Accepting the allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Complaint states plausible federal claims upon which relief may be granted. The motion to dismiss should therefore be denied.

## CONCLUSION

The motion to dismiss asks the Court to reject Plaintiff's factual allegations, draw inferences in Defendants' favor, and resolve disputed issues concerning state action, beneficial ownership, constitutional injury, and abstention. Rule 12(b)(6) does not permit such determinations.

The Complaint alleges plausible claims under Section 13(d) and 42 U.S.C. §1983. It further alleges facts supporting state action under *Lugar* and asserts injuries arising from Defendants' conduct rather than from any state-court judgment. Nothing in the pleadings establishes a basis for dismissal under *Younger*, *Rooker-Feldman*, or the domestic-relations exception.

At this stage, plausibility, not proof, governs. Accepting the allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Complaint states claims upon which relief may be granted.

**WHEREFORE**, Plaintiff MATTHEW D. YEAGER prays the Court deny the motion to dismiss brought by the non-state Defendants hereunder.

Dated: **October 1, 2026**

Respectfully submitted,

/s/ Matthew D. Yeager, In Pro Se
1047 Hickory Drive
Western Springs, IL 60558
Email: matthewyeager2024@gmail.com
Tel: (630) 862-1123

**CERTIFICATE OF SERVICE**

Plaintiff certifies that he has electronically filed this paper with the Court and upon opposing counsel which have filed their appearance in this matter.

Dated: **October 1, 2026** /s/ Matthew D. Yeager

**EXHIBIT 1**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

| | | |
|---|---|---|
| IN RE THE MARRIAGE OF | ) | |
| MATTHEW D. YEAGER, | ) | |
| Petitioner, | ) | No. 2020 D 002239 |
| and | ) | Calendar 62 |
| PAMELA SOCHOR, | ) | |
| Respondent. | ) | |

ENTERED
Judge Geri Pinzur Rosenberg-2271
SEP 09 2026
MARIYANA T. SPYROPOULOS
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY

**ORDER**

This cause coming for the court on September 8, 2026 for hearing on Petitioner Matthew D. Yeager's Motion to Dismiss, Pursuant to 735 ILCS 5/2-619.1, Respondent's Petition for Interim and Prospective Attorney's Fees and Costs Pursuant to 750 ILCS 5/508(a)(6) (the "Motion to Dismiss"), the Court having heard argument of the parties and being fully advised in the premises, and for the reasons set forth on the record, **IT IS HEREBY ORDERED THAT**:

1. Matthew's Motion to Dismiss is **DENIED**.
2. Matthew shall respond to Pamela's Petition for Interim and Prospective Attorney's Fees and Costs Pursuant to 750 ILCS 5/508(a)(6) by September 21, 2026.
3. Pamela's Petition for Interim and Prospective Attorney's Fees and Costs Pursuant to 750 ILCS 5/508(a)(6) shall be heard, on a summary basis, at 1:00 p.m. on September 28, 2026 in Courtroom 3010.

**ENTER:**

Geri Pinzur Rosenberg 2271

Judge

September 9, 2026

Order Prepared By
**BEERMANN LLP**
Counsel for Respondent
161 N Clark Street #3000
Chicago, IL 60601
312.621.9700 | mdelster@beermannlaw.com
Firm No. 80095

Copies to
Petitioner notice: notice@stein2.com
GAL: dsternfield@davisfriedman.com