BC

FILED
10/12/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

MPV

**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MATTHEW D. YEAGER, | |
| Plaintiff, | Civil No. 1:26-cv-06793 |
| v. | District Judge Sharon Johnson Coleman |
| JONATHAN D. STEELE et al., | **PLAINTIFF'S OPPOSITION TO NON-STATE DEFENDANTS' RULE 11 MOTION** |
| Defendants. | |

Plaintiff Matthew D. Yeager in pro se, for his opposition to the Motion for Sanctions under Rule 11 filed by the Non-State Defendants on August 14, 2026 under ECF 18, hereby states as follows:

## INTRODUCTION

Plaintiff Matthew D. Yeager respectfully submits his opposition to the Rule 11 Motion filed by Non-State Defendants Pamela Sochor, Jonathan Steele, Candace Meyers, and Beermann LLP.

Moving Defendants seek Rule 11 sanctions based on one transcription error in a 28-page complaint and two transcription errors in a private safe-harbor response letter that was never filed with the Court. They filed the private letter themselves as Doc 18-2 and ask this Court to sanction Plaintiff for it.

Rule 11 does not apply to papers never presented to the Court. Fed. R. Civ. P. 11(a), (b). The safe-harbor letter procedure under 11(c)(2) *requires* a private exchange first. *Nisenbaum v. Milwaukee County,* 333 F.3d 804, 808 (7th Cir. 2003); *Matrix IV, Inc. v. Am. Nat'l Bank*, 649 F.3d 539, 552-53 (7th Cir. 2011). A letter that was never filed cannot be sanctioned. *Ridder v. City of Springfield*, 109 F.3d 288, 293-94 (6th Cir. 1997).

The sole alleged non-existent citation in the *filed* complaint (Doc 1) is footnote 6 on page 25: "*IRMO Johnston*, 2014 WL 5460610 (Ill. App. Ct.)" The Westlaw cite is a transcription error - it resolves to *Medicus Ins. Co. v. Cross*, 2014 WL 5460610 (N.D.W.Va. Oct. 27, 2014). The *proposition* for which it was cited - that property-settlement terms in a Marital Settlement Agreement are non-modifiable contractual rights absent express statutory authorization - is black-letter Illinois law under 750 ILCS 5/502(f), 510(b) and *IRMO Vance*, 2014 IL App (3d) 130504; *IRMO Brankin*, 2012 IL App (2d) 110203. A mere citation error where the argument is non-frivolous does not violate Rule 11. *Divane v. Krull Eye*, 200 F.3d 1020 (7th Cir. 1999).

All six counts test unsettled law at the intersection of *Sveen v. Melin, 584 U.S. 811 (2018), Knick v. Township of Scott*, 588 U.S. 180 (2019)*, Stop the Beach Renourishment, Inc. v. Florida DEP*, 560 U.S. 702 (2010)*, Tyler v. Hennepin County*, 598 U.S. 631 (2023) and *SEC v. Drexel Burnham Lambert*, 837 F.Supp. 587 (S.D.N.Y. 1993)*, aff'd sub nom. SEC v. Posner*, 16 F.3d 520 (2d Cir. 1994).

Where the law is unsettled, filing suit cannot be deemed improper. *Mars Steel Corp. v. Continental Bank N.A.,* 880 F.2d 928, 932 (7th Cir. 1989) (en banc) (sanctions inappropriate where legal question is genuinely open). Rule 11(b)(2) expressly protects "a nonfrivolous argument for extending, modifying, or reversing existing law." Plaintiff's complaint does exactly that. This is, as Plaintiff stated, an essential part of what he does for his clients - testing boundaries of law. Such cutting-edge advocacy is protected.

**LEGAL STANDARD**

By presenting a pleading, a party certifies after reasonable inquiry that contentions are warranted by existing law or nonfrivolous argument for extension. Fed. R. Civ. P. 11(b)(2). Objective reasonableness, not correctness, is the test. *Mars Steel*, 880 F.2d at 932 - "Rule 11 does

not require a lawyer to be right, only to have a reasonable argument. When the law is in flux, a filing that tests its boundaries is not sanctionable."

Pro se status entitles Plaintiff to greater latitude, but Rule 11 binds pro se parties. *Vukadinovich v. McCarthy*, 901 F.2d 1439, 1445 (7th Cir. 1990). However, the 11(c)(5)(A) bar on monetary sanctions for 11(b)(2) violations applies only to represented parties - Plaintiff as a pro se plaintiff is not shielded from fees, but the Court must affirmatively limit any sanction to what deters repetition. 11(c)(4).

**ARGUMENT**

I. Plaintiff's July 9, 2026 safe-harbor response is not within scope of Rule 11.

Defendants' Exhibit B (ECF 18-2) is Plaintiff's private response to their June 19 safe-harbor letter, which is Defendants' Exhibit A (ECF 18-1). In fact, Plaintiff never filed the letter. Defendants filed it.

Rule 11(a) reads: "Every pleading, written motion, and other paper must be signed..." and presented to the court. Rule 11(b) reads: "By presenting to the court a pleading, written motion, or other paper - whether by signing, filing, submitting, or later advocating it..."

A private safe-harbor response is not a paper presented to the court. The 1993 Advisory Committee note: "The motion for sanctions must not be filed... if the challenged paper is withdrawn." The structure requires private exchange. *Ridder*, 109 F.3d at 293 - Rule 11 does not apply to a letter not filed.

Defendants concede at ECF 18 at 2: "while Moving Defendants do not seek sanctions for Plaintiff's response letter... they cite those materials as further evidence of improper motives." They therefore cannot obtain sanctions for the two citations in that letter:

(i) "*United States v. Duron*, 96 F.4th 1071 (7th Cir. 2024)", and

(ii) "*Gonzalez v. Bank of America*, 27 F.4th 1087 (7th Cir. 2022)"

Those were transcription errors in a private letter reviewing hundreds of cases. The holdings they supported are supported by real, filed authority: *Sprint Communications, Inc. v. Jacobs,* 571 U.S. 69 (2013); *Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009); *Sykes v. Cook County*, 837 F.3d 736 (7th Cir. 2016); *Milchtein v. Chisholm,* 880 F.3d 895 (7th Cir. 2018); *Easter House v. Felder*, 910 F.2d 1387 (7th Cir. 1990)(en banc). See ECF 36 (Plaintiff's Opposition to Motion to Dismiss), which cites only real cases and was filed with the Court.

II. The sole erroneous citation in the pleading stands for a valid proposition.

The pleading at ECF at 25 at n. 6 cites to "*IRMO Johnston*, 2014 WL 5460610 (Ill. App. Ct.)". The purpose of that citation is to lend support to the proposition that Marital Separation Agreement ("MSA") property terms are non-modifiable contractual rights.

Under Illinois law codified at 750 ILCS 5/502(f) and 5/510(b), property disposition provisions in an MSA are non-modifiable unless the MSA expressly provides or parties agree. This proposition is further supported by ample case law including *inter alia*: *IRMO Vance*, 2014 IL App (3d) 130504, ¶22; *IRMO Brankin*, 2012 IL App (2d) 110203.

The WL number is wrong. It should cite *Vance* and *Brankin*, not *Johnston*. The error is regrettable, but it does not render the argument frivolous.

III. The judicial taking and Contracts Clause claims require analysis of unsettled law.

**a. Analysis of Count I: Judicial Taking**

Defendants argue Count I (Judicial Taking) is foreclosed because "no federal court has ever recognized" one in the four years since *Stop the Beach*, citing *Pavlock v. Holcomb*, 35 F.4th 581, 587 (7th Cir. 2022). Notwithstanding that four years is not a long time in a judicial sense,

*Pavlock* itself says the Supreme Court has "explicitly not foreclosed" judicial takings. That is unsettled law. Where the governing law is unsettled, a filing cannot be 'unwarranted by existing law' under Rule 11(b)(2). See *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 932 (7th Cir. 1989) (en banc) (sanctions inappropriate where legal question is genuinely open).

Plaintiff pleads a two-step structure from *Stop the Beach* plurality, 560 U.S. 702, and *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155 (1980); *Phillips v. Washington Legal Foundation*, 524 U.S. 156 (1998); *Tyler v. Hennepin County*, 598 U.S. 631 (2023):

Step One consists of elimination of an established private right. Applied here, wherein the state court ignored and eviscerated the blockades effected by spendthrift protection, irrevocable third-party trust status and Plaintiff's complete lack of control, and the judicial estoppel of the 2021 MSA Waiver Sochor wherein Defendant Sochor waived all interest in Yeager Trusts **by ledgering the entire asset corpus of the Yeager Trusts**, this functional step is satisfied.

Step Two consists of transfer of property via coercion. Applied here, wherein the state court treats the entire asset corpus held by the Yeager Trusts as Plaintiff's personal ability to pay, orders Plaintiff to pay $95,000 in fees (exceeding $65,000 request propounded), and threatens contempt/incarceration for non-payment the elements of this functional step are satisfied. ECF 1 at ¶¶25-28, 94-96. The state court orders compel liquidation of assets held by the Yeager Trusts, wherein the trustees are forced to choose between the freedom of a high-ranking Yeager Corp executive and irrevocable liquidation of voting B shares. Under *Tyler*, the state cannot use machinery to extract value exceeding legitimately owed. Under *Easter House*, 910 F.2d 1387, the Seventh Circuit recognizes a due-process takings theory.

Furthermore, ripeness is correct under *Knick*, 588 U.S. 180 (overruling *Williamson*

*County*) and *Pakdel v. City and County of San Francisco*, 594 U.S. 474 (2021): definitive position was taken Oct 6, 2025 under the First Judicial Taking, and June 10, 2026 was the scheduled date for the Second Judicial Taking (ECF 1 at ¶91).

**b. Analysis of Count IV: Contracts Clause**

Count IV Contracts Clause raises the reasoning of *Sveen v. Melin*, 584 U.S. 811 (2018) which holds that MSAs and beneficiary designations are contracts with investment-backed expectations. Under *Tidal Oil Co. v. Flanagan*, 263 U.S. 444, 451 (1924), the Supreme Court limited Contract Clause claims directed at legislation, not judgments. However, Plaintiff argues for a non-frivolous extension: judicial reclassification of non-owned trust assets as marital liquidity that impairs a five-year-old MSA and irrevocable trust instruments **is legislative in effect**. That is cutting-edge testing of a legal boundary, explicitly protected by Rule 11(b)(2).

IV. Count V - Section 13(d) predicates are satisfied.

Defendants argue Count V fails because Defendants own zero shares, and *Edelson v. Ch'ien*, 405 F.3d 620, 634 (7th Cir. 2005) limits private 13(d) to tender offer or aggregation for control. ECF 18 at 10-11. Defendants argue that *GAF Corp. v. Milstein*, 453 F.2d 709 (2d Cir. 1971) inapplicable because the GAF defendants owned 10.25%.

They willfully ignore *SEC v. Drexel Burnham Lambert*, 837 F.Supp. 587, 607-608 (S.D.N.Y. 1993), aff'd, 16 F.3d 520. In *Drexel Burnham*, financier Ivan Boesky bought shares on Michael Milken's behalf - he was the legal title holder. However, the court determined that he was holding the share for Michael Milken under a secret handshake agreement. In effect, Boesky's brokerage account was the ledger where Michael Milken's interest was parked. Milken owned not a single share of stock, yet he was found guilty of executing a control structure attack wherein he directed the disposition of Boesky's shares. The court found that Michael Milken had

beneficial ownership under Rule 13d-3(a) because he had "significant ability to affect how voting power or investment power would be exercised" and was therefore a member of a Group under 15 U.S.C. §78m(d)(3) and Rule 13d-5(b)(1). Additional case law firms up this proposition: "Whether a group exists depends on whether or not members have combined in furtherance of a common objective. The concerted action need not be expressly memorialized in writing." *Wellman v. Dickinson*, 682 F.2d 355, 363 (2d Cir. 1982). Circumstantial evidence suffices. *SEC v. Savoy Industries*, 587 F.2d 1149, 1164 (D.C. Cir. 1978). Failure to file Schedule 13D is in and of itself an actual 10(b) violation. *Drexel Burnham* at 608.

Under the plain text of the federal statute, moreover, **acquisition does not require actually buying stock**. To wit, 17 C.F.R. §240.13d-3(a)(2) addresses the power to dispose or direct disposition. Continuing, the text under §240.13d-3(b) governs the use of any contract, arrangement, or device to obtain such power as part of plan to evade is deemed beneficial ownership. The analogy is precise and indeed identical to the circumstances here.

When Beermann LLP directed the state court to ledger the entire asset corpus of the Yeager Trusts - which hold 62.2% voting power of Yeager Corp, a $10B publicly traded corporation - the state court fulfilled the role of financier Boesky's brokerage account. ECF 1 ¶¶18-19, 23-26. In *Drexel Burnham*, financier Boesky held legal title for Milken just as the state court reserves its contempt power for Beermann LLP and its ability to sign off on Beermann LLP collecting awards in its own name pursuant to 750 ILCS 5/508(a).

The court should take judicial notice of Defendant Sochor's recent filing in the underlying custody docket, attached hereto as **Exhibit 1**, namely: *Respondent Pamela Sochor's Reply In Support of Her Petition For Interim and Prospective Attorney's Fees and Costs Pursuant to 750 ILCS 5/508(a)(6)*. Notably, in the prayer for relief at 6 at ¶C, Attorney Elster

seeks an order "**directing that the awards be paid to Beermann LLP**, **which may enforce them in its own name** pursuant to 750 ILCS 5/508(a), with any portion of the incurred award attributable to fees Pamela has already paid refunded to her". Continuing, Attorney Elster's attached affidavit at ¶4(b) explicitly admits that $4,400 was billed to Defendant Sochor for opposing Plaintiff's motion filed on July 5, 2026 to disqualify Beermann LLP as counsel for Defendant Sochor. That admission proves joint financial alignment. In other words, Attorney Elster cannot be simultaneously defending "at firm's own expense" in ¶5 while simultaneously billing Sochor $4,400 for the *same* federal work in ¶4(b). It's in the same affidavit. That's a false statement under oath and demonstrates that a non-frivolous factual basis exists to joint representation: the court should redirect its sanctions power towards an analysis of Attorney Elster's false statements before this Court.

Under *Drexel Burnham*, financier Boesky's ability to cause disposition without purchase is isomorphic to the state court's ability to cause the trustees of the Yeager Trusts to liquidate trust-held Yeager Corp voting B shares to prevent Plaintiff's contempt/incarceration, triggering irrevocable destruction of 95% of the voting power under the charter and reducing voting concentration. ECF 1 at ¶¶29, 32, 61. The comparison continues in a robust fashion: here, Defendants propounded 14 filings coinciding with earnings adjustments/quiet periods. Such fact constitutes circumstantial evidence of joint action (ECF 1 at ¶33).

Whether Illinois fee-shifting that ledgers an entire trust corpus can constitute Drexel-type stock parking and beneficial ownership is unsettled in this Circuit. Under *Mars Steel*, 880 F.2d at 932, such fact cannot form the basis for imposition of sanctions under Rule 11. Moreover, per the Exchange Act violations, Plaintiff seeks prospective injunctive relief under Section 27, 15 U.S.C. §78aa, which confers exclusive federal jurisdiction.

V. Per Count VI, litigation privilege neither forms a hand-hold for Rule 11.

Illinois absolute litigation privilege does not apply to conduct that is fraudulent, malicious, or outside legitimate litigation activity. *Scarpelli v. McDermott Will & Emery LLP*, 2018 IL App (1st) 170874; *Edelman v. Hinshaw & Culbertson*, 338 Ill.App.3d 156 (2003); *Stein v. Krislov*, 2013 IL App (1st) 113806; *Johnson v. Johnson & Bell, Ltd.*, 2014 IL App (1st) 122677. Whether seeking fee awards payable directly to the law firm itself, enforceable in its own name pursuant to 750 ILCS 5/508(a), with contempt enforcement (See Prayer ¶C, of **Exhibit 1**) - falls outside privilege and constitutes collection of a debt owed to counsel itself, not representation of client, is an unsettled question of law under Mars Steel, 880 F.2d at 932.

VI. Improper Purpose under 11(b)(1) is not satisfied.

Filing two days before the June 10, 2026 hearing in the state court is not improper when *Knick* makes the claim ripe immediately. Defendants' own post-safe-harbor conduct, wherein ECF 14 reveals a combined brief for Beermann Defendants **and** Defendant Sochor which is signed by the same counsel who swears in Sept 25, 2026 filing (**Exhibit 1**) at Aff. ¶5 wherein the Beermann Defendants are "defending at firm's own expense" while seeking an order paid to Beermann LLP enforceable in its own name - supports Plaintiff's joint-action allegation under *Lugar v. Edmondson Oil*, 457 U.S. 922 (1982) and demonstrates that this suit was manifestly not filed to harass but rather to test state-action via non-evidentiary procedures.

Moreover, the deceptions and verifiable false statements by Attorney Elster in this litigation provide colorable evidence of the Beermann LLP fraudulent *modus operandi*. Attorney Elster at ECF 14 – in his ultimately successful bid to not be disqualified from representing Defendant Sochor hereunder – declared verbatim and signed under the penalty of perjury pursuant to 28 U.S.C. §1746:

> I have never formally appeared in, attended any court proceeding in, drafted any document in, or exchanged any emails with Mr. Yeager's counsel in the domestic-relations matter between Plaintiff and Ms. Sochor pending in the Circuit Court of Cook County (No. 2020 D 002239).

By his own un-forced hand, that declaration is directly contradicted by **<u>Exhibit 1</u>** at ¶4(b) - $4,400 billed to Defendant Sochor for opposing the disqualification motion in this Court - and by his August 5, 2026 appearance in 2020 D 002239 e-filing a 508(a)(6) petition in the state court for federal fees[1], which post-dates the July 20, 2026 declaration. This contradiction is admissible for impeachment under the Rules of Evidence and supports Plaintiff's allegation of joint representation under *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715 (7th Cir. 1982).[2]

## CONCLUSION

Defendants flag one WL transcription error in the pleading, inserted for a verifiably valid Illinois legal proposition and two errors in a private, un-filed letter to anchor their illegitimate request for Rule 11 punishment. Holdings are supported by real authority filed cited under ECF 36. All claims in this matter test unsettled law - judicial takings after *Stop the Beach/Pavlock/Tyler*, Contracts Clause after *Sveen v Melin*, 13(d) Group after *Drexel Burnham* where Michael Milken owned zero shares yet was liable for control structure attack, with state court ledgering the entire asset corpus of the Yeager Trusts mirroring the exact manner in which financier Boesky held shares for Milken. Under *Mars Steel,* 880 F.2d at 932 and 17 C.F.R. §240.13d-3(a)(2), (b) - power to dispose or direct disposition does not require purchase, where

[1] On September 28, 2026, the state family court awarded $12,000 to Defendant Sochor pursuant to Attorney Elster's Petition for Interim and Prospective Attorneys's Fees and Costs Pursuant to 750 ILCS 5/508(a)(6). That risk was the basis of Plaintiff's recent emergency ex parte application for a TRO, which was denied under ECF 22 filed on August 24, 2026 and for which reconsideration was denied under ECF 24 filed on August 31, 2026.

[2] Attorney Elster also attempts to use testimony offered by Plaintiff in the state court about considering the filing of new federal actions to seek relief for ongoing violation of his constitutional rights in order to argue improper purpose. However, such filing activity is strictly protected by the Petition Clause (see e.g. *BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 525 (2002); *Bill Johnson's Rests. v. NLRB*, 461 U.S. 731 (1983)) and *Mars Steel*.

law is unsettled, filing suit cannot be deemed improper. The Non-State Defendants' Motion for Rule 11 Sanctions should be denied.

Finally, Plaintiff proposes this Court seriously consider Attorney Elster's contradictory sworn statements under the lens of its inherent power. The direct contradictions raised by the $4,400 billing line item in **Exhibit 1** in the affidavit at ¶4(b) versus ¶5 'firm's own expense' and the July 20, 2026 declaration of Attorney Elster at ECF 14 raise serious questions. The joint financial alignment and joint participation with the state court furthermore passes muster for the purposes of establishing state action under *Lugar v. Edmondson Oil*, 457 U.S. 922 (1982) and *Dennis v. Sparks*, 449 U.S. 24 (1980) wherein Attorney Elster and the Beermann LLP law firm have erected a Milken-type control structure wherein Beermann LLP, owning zero shares of Yeager Corp, acquires beneficial ownership via the state court's ledgering of the entire asset corpus of the Yeager Trusts which hold 62.2% of the voting power of Yeager Corp.

**WHEREFORE**, Plaintiff Matthew D. Yeager hereby respectfully requests that this Court deny the Motion for Sanctions under Rule 11 brought by the Non-State Defendants hereunder.

Dated: **October 12, 2026**

Respectfully submitted,

/s/ Matthew D. Yeager, In Pro Se
1047 Hickory Drive
Western Springs, IL 60558
Email: matthewyeager2024@gmail.com

**CERTIFICATE OF SERVICE**

Plaintiff certifies that he has electronically filed this paper with the Court and upon opposing counsel which have filed their appearance in this matter.

Dated: **October 12, 2026** /s/ Matthew D. Yeager

**EXHIBIT 1**

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAcSi8E%3d&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

FILED
9/25/2026 1:24 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2020D002239
Calendar, 62
40185023

FILED DATE: 9/25/2026 1:24 PM 2020D002239

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION**

| | | |
|---|---|---|
| IN RE THE MARRIAGE OF | ) | |
| | ) | |
| MATTHEW D. YEAGER, | ) | |
| | ) | |
| Petitioner, | ) | No. 2020 D 002239 |
| | ) | |
| and | ) | Calendar 62 |
| | ) | |
| PAMELA SOCHOR, | ) | |
| | ) | |
| Respondent. | ) | |

**RESPONDENT PAMELA SOCHOR'S REPLY IN SUPPORT OF HER PETITION FOR INTERIM AND PROSPECTIVE ATTORNEY'S FEES AND COSTS PURSUANT TO 750 ILCS 5/508(a)(6)**

Respondent, Pamela Sochor, through her attorneys, BEERMANN LLP, replies in support of her Petition for Interim and Prospective Attorney's Fees and Costs Pursuant to 750 ILCS 5/508(a)(6) (the "Petition") and states as follows:

## INTRODUCTION

Matthew sued Pamela in federal court over fee relief she sought and obtained in this case. This Court already ruled that his federal lawsuit constitutes ancillary litigation pursuant to 750 ILCS 5/508(a)(6). This Court already ruled that Pamela lacks the ability to pay her own fees. And this Court already ruled that Matthew possesses such ability. The only real question before this Court is the reasonableness of the fees Pamela seeks for her defense, not whether Matthew can avoid contributing to that defense by simultaneously suing her lawyers.

To be clear: Pamela does not seek the Beermann defendants' separate defense costs. She seeks fees billed to her for defending claims pleaded against her in the

FILED DATE: 9/25/2026 1:24 PM 2020D002239

Federal Action. The accompanying Supplemental Affidavit identifies that work by category and hours and further reflects a voluntary reduction in Pamela's initial request for fees. She requests $11,770.00 for fees incurred through August 26, 2026, and $10,000.00 for the remaining pleading-stage defense.

## ARGUMENT

### I. THIS COURT ALREADY DETERMINED THAT THE FEDERAL ACTION IS ANCILLARY LITIGATION.

On September 9, 2026, the Court denied Matthew's motion to dismiss the Petition, finding that the Federal Action is ancillary litigation incident to, or reasonably connected with, a proceeding under this Act. 750 ILCS 5/508(a)(6). It was correct then and it is correct now.

A lawsuit that attacks this Court's fee orders count by count, and sues an opposing party and her counsel for obtaining them, is reasonably connected with this proceeding by any measure. The federal court has also directed Matthew to this Court. In declining Matthew's *ex parte* request to restrain Pamela and her attorneys from seeking fees in this case, Judge Coleman explained that "the place to contest such fees is in the courts of Illinois, not in Federal court." Fed. Dkt. 22 (Aug. 24, 2026); *see also* Fed. Dkt. 24 (Aug. 31, 2026) (denying reconsideration).

### II. THIS COURT HAS ALREADY CONSIDERED AND REJECTED MATTHEW'S FINANCIAL OBJECTIONS.

Section 508(a) directs the Court to consider "the financial resources of the parties" when assessing fees. 750 ILCS 5/508(a). The Court did so on June 10, 2026. Matthew's April 20, 2026 response to Pamela's third fee petition raised the same trust

FILED DATE: 9/25/2026 1:24 PM 2020D002239

and stock objections he repeats now (April 20 Response § III.B, at 12-15), and his May 18, 2026 surreply asked the Court to disregard his restricted stock compensation (May 18 Surreply ¶¶ 3, 16-17). The June 10 order identifies both filings among the materials the Court considered, and still found Matthew able to pay and Pamela unable to pay, and awarded her $180,547.

Nothing in Matthew's Response gives this Court reason to depart from its recent findings. His Response does not suggest any changes to his financial condition, does not identify his earnings (while asking this Court to base its analysis on "his earnings alone"). According to his financial affidavit, Matthew earns a gross monthly income of $46,423.98—over half a million dollars a year. Matthew Fin. Aff. at 3-6. While Matthew argues that his ability to pay is "not unlimited," that is not the measure by which fees are assessed. His resources need only be sufficient to pay the reasonable amount requested here, and a request that equates to less than one half of one month of Matthew's income can hardly be said to undermine his financial position.

Matthew further fails to allege that Pamela's circumstances have improved. The inability-to-pay standard "was never intended to limit awards of attorney fees to those situations in which a party could show a $0 bank balance"; a party is unable to pay if, after considering the relevant statutory factors, the court finds that requiring her to pay the entirety of her fees "would undermine his or her financial stability." *In re Marriage of Heroy*, 2017 IL 120205, ¶ 19. The Court resolved that question in Pamela's favor on June 10, and nothing in the Response calls that finding into doubt.

FILED DATE: 9/25/2026 1:24 PM 2020D002239

## III. PAMELA SEEKS ONLY HER OWN FEES.

Pamela does not dispute that section 508(a) authorizes an award of a party's fees, not the defense costs of nonparty federal defendants. Accordingly, she has not sought and does not seek Beermann LLP's defense costs. Every dollar of fees Pamela incurred in the defense of the Federal Action was pertained to her defense of that action, and she has not been billed for <u>any</u> work performed exclusively for Beermann LLP or its attorney-defendants. See Supplemental Affidavit. ¶ 5.

### a. Pamela Needed A Defense Whether Or Not Matthew Sued Her Lawyers.

The gist of Matthew's argument is that because he sued both Pamela and her attorneys in federal court, and because Beermann LLP represents both its client and itself in that lawsuit, Pamela cannot recover fees for her defense. In other words, he seeks to be rewarded for suing her attorneys. He should not be.

Every one of Matthew's six counts in the Federal Action is asserted against <u>all defendants</u>. Not one of his claims draws any distinction between Beermann or Pamela. Put differently, he does not advance a single claim against Beermann alone that Pamela does not also have to defend. Thus, had Matthew only sued Pamela, her attorneys would have performed the exact same work, asserted the same arguments for dismissal, and interposed the same defenses to disqualification. That this work applied to both Beermann and Pamela is a function of Matthew's slapdash pleading, it is not an example of Beermann seeking to have him pay the cost of their defense.

### b. Pamela Voluntarily Reduces Her Request.

As outlined in the attached supplemental affidavit, Pamela's initial

FILED DATE: 9/25/2026 1:24 PM 2020D002239

$12,562.50 request was slightly overstated insofar as it inadvertently included time spent unrelated to the federal matter. Pamela does not ask this Court to award fees for this time and voluntarily reduces her request for fees to $11,770 : $10,450 for her defense of the Federal Action and $1,320 for this fee proceeding. Supp. Elster Aff. ¶¶ 3-4.

The $1,320 figure partially covers the time Pamela incurred preparing and presenting her Fee Petition and defending against Matthew's motion to dismiss it. A petition for fees under section 508 is itself the "maintenance of a 'proceeding' under the Act within the meaning of section 508(a)(1)," and the time spent preparing it is compensable. *In re Marriage of Powers*, 252 Ill. App. 3d 506, 512 (1993).

## IV. PROSPECTIVE FEES SHOULD BE AWARDED, WITH PROTECTION AGAINST DUPLICATION.

The Federal Action is still at the pleading stage, and Matthew has yet to respond to Pamela's Motion to Dismiss, and she has yet to reply. Given his recent conduct (seeking *ex parte* injunctive relief, seeking reconsideration of the denial, and appealing that denial), it is unreasonable to expect Pamela's future involvement in the Federal Action to be limited to filing a reply.

Pamela requests $10,000 for the remaining pleading-stage defense of the Federal Action. In the event that sum turns out to be unnecessary, any unapplied balance would be returned to Matthew. To the extent Matthew is ordered to pay fees in the Federal Action, any duplicate recovery would be returned to Matthew. Pamela is not seeking to double dip.

FILED DATE: 9/25/2026 1:24 PM 2020D002239

The request does not include fees incurred after August 26, 2026, including the work on this fee proceeding since then, and Pamela reserves those fees.

WHEREFORE, Respondent, PAMELA SOCHOR, respectfully requests that this Court enter an order:

A. Ordering Petitioner, MATTHEW D. YEAGER, to pay $11,770 toward Pamela's attorney's fees incurred through August 26, 2026, consisting of $10,450 for her defense of the Federal Action pursuant to 750 ILCS 5/508(a)(6) and $1,320.00 for this fee proceeding pursuant to 750 ILCS 5/508(a)(1), within 14 days of the entry of the order;

B. Ordering Matthew to pay $10,000 in prospective attorney's fees for the remaining pleading-stage defense of the Federal Action pursuant to 750 ILCS 5/508(a)(6), within 14 days of the entry of the order;

C. Directing that the awards be paid to Beermann LLP, which may enforce them in its own name pursuant to 750 ILCS 5/508(a), with any portion of the incurred award attributable to fees Pamela has already paid refunded to her;

D. Reserving Pamela's request for fees incurred after August 26, 2026; and

E. Granting such other and further relief as this Court deems just and equitable.

**BEERMANN LLP**
Matthew D. Elster
161 N. Clark Street, Suite 3000
Chicago, Illinois 60601
(312) 621-9700
mdelster@beermannlaw.com
Firm No. 80095

Respectfully submitted,

**BEERMANN LLP**

By: /s/ Matthew D. Elster
One of Respondent's Attorneys

FILED DATE: 9/25/2026 1:24 PM 2020D002239

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION**

| | | |
|---|---|---|
| IN RE THE MARRIAGE OF | ) | |
| MATTHEW D. YEAGER, | ) | |
| Petitioner, | ) | No. 2020 D 002239 |
| and | ) | Calendar 62 |
| PAMELA SOCHOR, | ) | |
| Respondent. | ) | |

**SUPPLEMENTAL AFFIDAVIT OF MATTHEW D. ELSTER**

Affiant, Matthew D. Elster, being duly sworn under penalties and perjury, states as follows:

1. I am a partner of Beermann LLP and counsel for Respondent, Pamela Sochor, in *Yeager v. Steele*, No. 1:26-cv-06793 (N.D. Ill.) (the "**Federal Action**"). I submit this affidavit to correct and update the affidavit I submitted with Pamela's Petition for Interim and Prospective Attorney's Fees and Costs (the "Petition") on August 5, 2026. I have personal knowledge of the facts stated here and, if called as a witness, could competently testify to them.

2. Paragraph 7 of my August 5, 2026 affidavit stated that Pamela had incurred $12,562.50 in attorney's fees and costs in her defense of the Federal Action. Upon further review of Beermann LLP's billing statements, I discovered that figure included several time entries for which Pamela does not seek fees totaling: $1,672.50.

3. Removing those amounts from $12,562.50, while including an additional $880.00 for work performed between August 5 and August 26, 2026 on the Petition and Matthew's motion to dismiss it yields the proper figure of $11,770.00. That is the amount of fees billed to Pamela through August 26, 2026 for which she seeks contribution. It does not include fees incurred after August 26, 2026.

FILED DATE: 9/25/2026 1:24 PM 2020D002239

4. The $11,770.00 consists of 21.4 hours of my time at $550 per hour, in these categories: (a) the motion to dismiss the complaint, which answers all six counts pleaded against Pamela: 10.1 hours ($5,555.00); (b) opposing Matthew's motion to disqualify Beermann LLP as Pamela's counsel, including Pamela's declaration and the July 22, 2026 hearing: 8.0 hours ($4,400.00); (c) waivers of service and appearances: 0.4 hour ($220.00); (d) communications with Pamela about the Federal Action: 0.5 hour ($275.00); and (e) this fee proceeding, including preparing, filing, and presenting the Petition and reviewing Matthew's motion to dismiss it: 2.4 hours ($1,320.00).

5. Beermann LLP and its attorneys are defending the Federal Action at the firm's own expense. Each category in paragraph 4 reflects work performed with respect to the claims Matthew advanced against Pamela, on the motion to disqualify her counsel in the federal matter, or on this fee proceeding. None of that time was billed for work performed exclusively for the defense of Beermann LLP or its attorneys.

6. The pleading-stage defense of the Federal Action is ongoing. Matthew's response to the motion to dismiss is due October 1, 2026, and the defendants' reply is due October 15, 2026. Matthew's filings in the Federal Action have repeatedly cited authority and caselaw that does not exist, and I expect his response will require verification of each authority before the reply can be prepared. The remaining pleading-stage work includes reviewing that response, preparing and filing the reply, attending any hearing the federal court sets on the motion, and responding to any amended complaint. I estimate that work at approximately 18 hours, or approximately $10,000.00 at my hourly rate. The estimate does not include appellate work or sanctions practice.

7. The fees described in paragraph 4 were necessary and reasonable to represent Pamela's interests.

FILED DATE: 9/25/2026 1:24 PM 2020D002239

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

Dated: September 25, 2026

*/s/ Matthew D. Elster*

**BEERMANN LLP**
Matthew D. Elster
161 N. Clark Street, Suite 3000
Chicago, Illinois 60601
(312) 621-9700
mdelster@beermannlaw.com
Firm No. 80095