**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MATTHEW D. YEAGER,<br><br>Plaintiff,<br><br>v.<br><br><br>JONATHAN D. STEELE, ESQ., CANDACE L. MEYERS, ESQ., JOHN M. D'ARCO, ESQ., BEERMANN LLP, PAMELA SOCHOR, and KWAME RAOUL,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil No. 1:26-cv-06793<br><br>Hon. Sharon Johnson Coleman |

**MOVING DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11**

Defendants Jonathan D. Steele, Candace L. Meyers, John M. D'Arco, Beermann LLP, and Pamela Sochor (collectively, "**Moving Defendants**"), by their attorneys, submit this reply in support of their motion (Dkt. 18) seeking the imposition of Rule 11 sanctions against Plaintiff, Matthew D. Yeager, as follows:

## INTRODUCTION

Plaintiff recasts this motion as a dispute over "one transcription error in a 28-page complaint." *Opp. at 1.* It is not. Moving Defendants seek sanctions because the Complaint advances legal contentions that no objectively reasonable inquiry could support, because Plaintiff kept advocating them after receiving a Rule 11 notice identified the controlling authority, and because the Complaint was filed for an improper purpose. Dkt. 18 at 1–2, 7–13. Plaintiff does not respond to the motion's

arguments that he received the process he says he was denied (Count II), that seeking a fee award does not shock the conscience (Count III), or that he lacks standing to sue for injuries to trusts he admittedly does not control. *Id.* at 7, 9–10. Those arguments stand unrebutted. And despite receiving a Rule 11 letter, Moving Defendants' motion, and this Court's September 4, 2026 admonishment that if he "continues to file motions with no basis in law, the Court may consider imposing sanctions" (Dkt. 31), Plaintiff has, once again, filed a document with this court littered with citations to nonexistent cases, nonexistent quotes to real cases, and objectively false statements of law and fact. While sanctionable in its own right, Plaintiff's Opposition demonstrates the frivolity of this case, Plaintiff's "file first and ask questions later" approach to federal litigation, and the improper purpose for which it was brought. This case is not, nor has it ever been, a serious lawsuit. It is a collateral attack on Plaintiff's state-court opponents and one which should result in sanctions.

## ARGUMENT

### a. Plaintiff Defends His Complaint by Misquoting the Seventh Circuit.

Plaintiff invokes *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928 (7th Cir. 1989) (*en banc*), seven times in his opposition and quotes it once as stating:

> "Rule 11 does not require a lawyer to be right, only to have a reasonable argument. When the law is in flux, a filing that tests its boundaries is not sanctionable."
>
> *Opp. at 2–3.*

Those words appear nowhere in *Mars Steel*. What the *en banc* court actually said is that Rule 11 requires a litigant to read the law before invoking it:

> "An empty head but a pure heart is no defense. The Rule requires counsel to read and consider before litigating." Counsel may not drop papers into the hopper and insist that the court or opposing counsel undertake bothersome factual and legal investigation.
>
> 880 F.2d at 932 (quoting *Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir. 1986)).

The court then affirmed the imposition of Rule 11 sanctions, and imposed further sanctions under Appellate Rule 38. *Id.* at 939. *Mars Steel* protects a reasonably researched argument for changing the law; it does not protect a litigant who attributes to the court words it never wrote.

Plaintiff next cites *Divane v. Krull Elec. Co., Inc.*, 200 F.3d 1020 (7th Cir. 1999), as "*Divane v. Krull Eye*" for the proposition that "[a] mere citation error where the argument is non-frivolous does not violate Rule 11." *Opp. at 2. Divane* says nothing of the sort. It affirmed the decision to impose Rule 11 sanctions, including the finding that the sanctioned attorney "could not have made a reasonable inquiry" before filing his counterclaim, while remanding the amount for recomputation. *Id.* at 1022, 1028.

Nor does Plaintiff's description of his claims as "testing boundaries of law" and engaging in "cutting-edge advocacy" help him. *Opp. at 2.* Rule 11(b)(2) protects nonfrivolous arguments for changing the law, not labels; the question is whether the litigant "has researched the issues and found some support for its theories even in minority opinions, in law review articles, or through consultation with other attorneys." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. Plaintiff identifies no such support for treating a fee award as a taking, a judgment as legislation, or an attorney filing s fee petition as forming a section 13(d) group.

**b. Plaintiff Defends a Nonexistent Decision with Another Nonexistent Citation.**

In footnote 6 of his Complaint, Plaintiff cited "IRMO Johnston, 2014 WL 5460610 (Ill. App. Ct.) as holding "that judicial modification of a private MSA is constitutionally constrained." Dkt. 1 at 25 n.6. In response to Moving Defendants pointing out that this case does not exist, Plaintiff brushes it off as "regrettable" without identifying how or why this phantom citation came into existence. *Opp. at 2.* Instead, he asserts that his footnote "should cite Vance and Brankin, not Johnston," and recasts it as support for a statutory proposition instead. *Opp. at 4.*

"IRMO Vance, 2014 IL App (3d) 130504, ¶22" also does not exist. The real *In re Marriage of Vance*, 2016 IL App (3d) 150717, involved an appeal of child support, attorneys' fees, and the classification of a home, not a marital settlement agreement. *In re Marriage of Brankin*, 2012 IL App (2d) 110203 is real, but it addressed a maintenance award and life insurance to secure it. It says nothing about section 502(f), the modifiability of settlement terms, or the Constitution. *Id.* ¶ 4.

Plaintiff's decision to substitute one fake case for another—rather than withdrawing his unsupported contentions, "does not alleviate the need to sanction him; it compounds that need." *Divane,* 200 F.3d at 1029.

**c. Moving Defendants Do Not Seek Sanctions for Plaintiff's Safe Harbor Response.**

As the motion made clear, Moving Defendants do not seek sanctions for Plaintiff's July 9, 2026 letter (Dkt. 18 at 2). Nevertheless, Plaintiff attacks an argument Moving Defendants do not make, citing the Sixth Circuit's *Ridder* decision

for the proposition that "[a] letter that was never filed cannot be sanctioned." *Opp. at 1,* 3. *Ridder* says nothing about the sanctionability of safe harbor letters. *Ridder v. City of Springfield*, 109 F.3d 288 (6th Cir. 1997).

**d. Plaintiff's Defense of Count I (Judicial Takings) Misstates *Pavlock* and Ignores the Doctrine's Limits.**

Plaintiff does not dispute that no federal court has *ever* recognized a private cause of action for judicial takings. He asserts, however, that "*Pavlock* itself says the Supreme Court has 'explicitly not foreclosed' judicial takings." *Opp. at 5. Pavlock* contains no such phrase. It says "no federal court of appeals has recognized this judicial-takings theory." *Pavlock v. Holcomb*, 35 F.4th 581, 587–88 (7th Cir. 2022). Plaintiff cites no decision that has in the 16 years (not four) since *Stop the Beach*.

Even if this Court chose to recognize a cause of action for judicial takings, the facts alleged here—an award of fees in against one private litigant and in favor of another—cannot be said to constitute the government taking of private property for public use, a necessary predicate for any taking. Plaintiff offers no explanation, plausible or otherwise, to the contrary.

**e. Plaintiff's Own Authority Confirms the Frivolity of His Contracts Clause Claim (Count IV).**

Plaintiff concedes that under *Tidal Oil Co. v. Flanagan*, 263 U.S. 444, 451 (1924), the Contract Clause reaches impairment by legislation, "not judgments." *Opp. at 6.* He asks this Court to treat a judgment as legislation anyway, describing his request as "cutting-edge testing of a legal boundary." But he supplies no reasoned basis, and no authority, which would permit this Court to treat routine fee orders as

legislative action or to change the controlling rule, and in the absence of any cognizable action by the Illinois General Assembly, no amount of bold-faced text should convince this Court that a state court ruling on attorney's fees "**is legislative in effect.**" *Opp. at 6* (emphasis in original). See *Land v. Chicago Truck Drivers Union,* 25 F.3d 509, 516–18 (7th Cir.1994) (claims which are directly contradicted by well established law are sanctionable under Rule 11).

Nor does *Sveen v. Melin*, 584 U.S. 811 (2018), help him. The phrase "investment-backed expectations," which Plaintiff attributes to it, appears nowhere in the opinion. *Opp. at 6*. *Sveen* involved a Minnesota statute which automatically revoked certain beneficiary designations upon divorce, and stands for the proposition that applying that statute to a beneficiary designation made before its enactment did not violate the Contracts Clause. If anything, *Sveen* confirms that the Contracts Clause applies only to legislation, not judicial decisions. *Id. at 813, 821*. Plaintiff's decision to press on with Count IV while defending it with inapposite authority warrants sanctions.

**f. Plaintiff's Own Authority Forecloses His Section 13(d) Claim.**

The motion showed that Plaintiff's own authority, *Edelson v. Ch'ien*, 405 F.3d 620 (7th Cir. 2005), limits private section 13(d) actions to the context of "a tender offer or aggregation of shares for the purpose of controlling the issuer," neither of which is pled here. 405 F.3d at 634. Plaintiff does not discuss *Edelson* at all in his opposition. Instead, he accuses Moving Defendants of ignoring *SEC v. Drexel*

*Burnham Lambert Inc.*, 837 F. Supp. 587 (S.D.N.Y. 1993)—an SEC enforcement action, not a private suit—the facts of which he repeatedly mischaracterizes.

Plaintiff asserts that in *Drexel Burnham*, Ivan Boesky bought shares "on Michael Milken's behalf," that Milken "owned not a single share of stock, yet he was found guilty," and that "[t]he court found that Michael Milken had beneficial ownership." *Opp. at 6–7.* None of that is accurate.

*Drexel Burnham* involved a stock-parking scheme where two shareholders (the Posners), subject to a standstill agreement prohibiting their further acquisition, enlisted a straw buyer (Boesky) to acquire sufficient shares to trigger the removal of those restrictions, thereby allowing them to purchase those shares, thereby obtaining a controlling interest in the subject business. The gist of the case was that the Posners violated section 13(d) by failing to disclose the stock purchased at their behest by the straw buyer. *Id.* at 609.

It is difficult to understand why Plaintiff thinks *Drexel Burnham* helps him or what, precisely, he means by "financier Boesky's ability to cause disposition without purchase is isomorphic to the state court's ability to cause the trustees of the Yeager Trusts to liquidate trust-held Yeager Corp voting B shares to prevent Plaintiff's contempt/incarceration, triggering irrevocable destruction of 95% of the voting power under the charter and reducing voting concentration." *Opp. at 8.* Plaintiff's word salad does not alter the fact that no Moving Defendant is alleged to have bought, parked, or acquired a single share in "Yeager Corp." And yet, Plaintiff asks this Court to credit his theory by casting the state court as the straw buyer and Beermann LLP as the

hidden owner of shares it has never held, voted, or had any right to acquire. *Opp. at 7, 11*.

This Court need not tie itself in knots to manufacture a plausible justification for a patently frivolous claim, construe a state court fee award into a scheme to commit securities fraud, or ignore the plain requirements set forth in *Edelson* precluding a private cause of action under the circumstances alleged in Plaintiff's Complaint. Count V of Plaintiff's Complaint may win points for creativity, but *creative* is not synonymous with *non-frivolous*.

**g. Plaintiff's Arguments Regarding the Inapplicability of Illinois' Litigation Privilege are Baseless.**

In response to arguments that his state law claim for tortious interference (Count VI) is barred by Illinois' absolute litigation privilege, Plaintiff invents new law to artificially limit that privilege, citing four cases for the proposition that the privilege "does not apply to conduct that is fraudulent, malicious, or outside legitimate litigation activity." *Opp. at 9*. None supports the exception he pleads because that exception does not exist.

His cases recognize that the privilege reaches only conduct pertinent to the litigation, but none creates an exception for "fraudulent [or] malicious" conduct. Illinois law is clear that "an attorney's motives are irrelevant with respect to the applicability of the privilege, as is the reasonableness or unreasonableness of his conduct." *Scarpelli v. McDermott Will & Emery LLP*, 2018 IL App (1st) 170874, ¶ 31. See also *Johnson v. Johnson & Bell, Ltd.*, 2014 IL App (1st) 122677, ¶ 15 (same). The same is true of a private party's litigation conduct: her "motives underlying her

conduct are irrelevant," and "the only requirement for application of the privilege is that the conduct pertained to the …litigation." *Lewis v. Kalbhen*, 2025 IL App (1st) 242110, ¶ 24. Seeking relief, authorized by statute, in a pending case is conduct, definitionally, pertaining to litigation. See 750 ILCS 5/508(a) (authorizing awards of fees "paid directly to the attorney, who may enforce the order in his or her name."). Plaintiff cannot evade sanctions by rewriting Illinois law to suit his whims.

**h. Plaintiff's Opposition Confirms His Complaint's Improper Purpose.**

Plaintiff does not dispute that he filed suit two days before the June 10, 2026 state court fee hearing, labeled the ruling not yet made as the "Second Judicial Taking," and asked this Court to directly intervene and enjoin enforcement of orders in a pending state case. Dkt. 18 at 12. His only answer—that *Knick v. Twp. of Scott*, 588 U.S. 180 (2019), made his claim "ripe immediately," *Opp. at 9*—does not explain suing his opponents over a ruling not yet made or any of the other myriad flaws in his Complaint.

Plaintiff's remaining arguments rest on Ms. Sochor's state-court fee filing. He contends that her request that a fee award be paid to her counsel shows "joint financial alignment" amounting to state action. *Opp. at 8, 11*. Of course, he cites no authority holding that a shared interest in obtaining a fee award establishes joint action with the State, especially where such a request involves relief expressly authorized by statute. Again, "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with

the judge." *Dennis v. Sparks*, 449 U.S. 24, 28 (1980); see Dkt. 24 (observing, in denying reconsideration of the TRO ruling, that "Defendants are not state actors").[1]

## CONCLUSION

To paraphrase Brandolini's Law, the amount of energy needed to refute frivolous arguments is an order of magnitude greater than that needed to produce them. That principle is on full display here. Plaintiff, armed with a grudge and an AI subscription, has filed a baseless lawsuit and numerous baseless filings, forcing the Moving Defendants (and this Court) to devote time and resources to debunking his frivolous arguments. This case embodies the problem that *Mars Steel* cautioned against: a plaintiff "drop[ping] papers into the hopper and insist[ing] that the court or opposing counsel undertake bothersome factual and legal investigation." *Mars Steel*, 880 F.2d at 932. Plaintiff files document after document misquoting cases, manufacturing authorities, and literally making up the law as he goes, all while leaving it to the Moving Defendants and this Court to make sense of his filings and clean up his mess.

Rule 11 sanctions must be "limited to what suffices to deter repetition of the conduct." Fed. R. Civ. P. 11(c)(4). Plaintiff has not been deterred by a safe-harbor notice, warnings from this Court, or the latitude it has extended him. Dkts. 18-1, 31, 37. Courts in this District have sanctioned *pro se* litigants who persist in presenting authority that does not say what they claim. See, e.g., *Obi v. Cook County*, No. 25 C

[1] Apparently unhappy that the state court ordered him to pay Defendant Sochor's fees for the defense of this litigation, Plaintiff renews his repeated attacks against the undersigned counsel and asks it to "redirect its sanctions power" against him based upon a state court affidavit. *Opp. at 9-10*. This Court has twice rejected Plaintiff's attacks on Moving Defendants' counsel (Dkt. 16, Dkt. 31), and should do so again here.

3096, Dkt. 97 at 3–4 (N.D. Ill. Apr. 9, 2026) (sanctioning *pro se* plaintiff for repeated fabricated citations, including a quotation "not in *Ridder*"). Here, even after being called out for citing non-existent authority and misstating existing authority, Plaintiff persists in doing so. This is a far cry from *Jones* where the Seventh Circuit declined to impose sanctions against a *pro se* appellant where the court had "no reason to believe his misstatements of law were knowing or intentional. *Jones v. Kankakee County Sheriff's Department*" 164 F.4th 967, 969–71 (7th Cir. 2026).

For the reasons stated above and in their motion, Moving Defendants respectfully request that the Court enter an order (i) finding that each count of the Complaint violates Rule 11(b)(2) and that the Complaint was presented for an improper purpose in violation of Rule 11(b)(1); (ii) directing Plaintiff to pay the reasonable attorney's fees and expenses directly resulting from those violations, together with the reasonable expenses of presenting this motion, in amounts to be established by a fee petition filed within 21 days of the Court's order; and (iii) requiring Plaintiff to obtain leave of court before filing in this District any further civil action against any Moving Defendant, or any Beermann LLP attorney or employee, arising out of *In re Marriage of Yeager*, No. 2020 D 002239 (Cir. Ct. Cook Cnty.), or Beermann LLP's representation of Ms. Sochor. Dkt. 18 at 13–14; Fed. R. Civ. P. 11(c)(2), (4).

Respectfully submitted,

**BEERMANN LLP**

By: *<u>/s/ Matthew D. Elster</u>*

**BEERMANN LLP**
161 N. Clark Street, Suite 3000
Chicago, Illinois 60601
312.621.9700 | mdelster@beermannlaw.com

## CERTIFICATE OF SERVICE

I certify that on October 26, 2026, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will send notice to all parties and counsel of record.

/s/ *Matthew D. Elster*